STATE of Missouri, Appellant,

v.

Danny VAUGHN, Respondent.

No. SC 91670.

Supreme Court of Missouri,
En Banc.

May 29, 2012.

John W. Grantham, Daniel N. McPherson, Attorney General's Office, Jefferson City, for State.

Ellen H. Flottman, Public Defender's Office, Columbia, for Vaughn.

WILLIAM RAY PRICE, JR., Judge.

## I.

The State of Missouri appeals an order of the Circuit Court of Scott County invalidating section 565.090.1, subdivisions (5) and (6), RSMo, Supp.2008, as being unconstitutionally vague and overbroad. This Court has exclusive jurisdiction of the appeal pursuant to article V, section 3, of the Missouri Constitution because it involves the validity of a Missouri statute. We affirm in part and reverse in part.

## II.

In October 2010, Respondent was charged with one count of burglary and one count of harassment. Count I alleged that on April 27, 2010, Respondent "knowingly entered unlawfully in a building, ... owned by Retha Vaughn, for the purpose of committing harassment therein."[1] Count II alleged that on May 10, 2010, Respondent, "for the purpose of frightening Retha Vaughn[,] made repeated telephone calls to Retha Vaughn."[2] The State later filed an amended information clarifying Count II by further alleging that Respondent "knowingly made repeated communications with Retha Vaughn knowing that the communications were unwanted, to wit: making repeated phone calls to Retha Vaughn after being told not to call her again."

Respondent filed a motion to dismiss both counts. At the motion hearing, the prosecution asserted that harassment charges under Count I would fall under section 565.090.1, subdivision (6), and that the harassment charges under Count II would fall under subdivision (5). The

1. Section 569.170, RSMo 2000, provides: "A person commits the crime of burglary in the second degree when he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein."

2. Section 565.090.1, RSMo Supp.2008, provides:

A person commits the crime of harassment if he or she:

(1) Knowingly communicates a threat to commit any felony to another person and in so doing frightens, intimidates, or causes emotional distress to such other person; or

(2) When communicating with another person, knowingly uses coarse language offensive to one of average sensibility and thereby puts such person in reasonable apprehension of offensive physical contact or harm; or

(3) Knowingly frightens, intimidates, or causes emotional distress to another person by anonymously making a telephone call or any electronic communication; or

(4) Knowingly communicates with another person who is, or who purports to be, seventeen years of age or younger and in so doing and without good cause recklessly frightens, intimidates, or causes emotional distress to such other person; or

(5) Knowingly makes repeated unwanted communication to another person; or

(6) Without good cause engages in any other act with the purpose to frighten, intimidate, or cause emotional distress to another person, cause such person to be frightened, intimidated, or emotionally distressed, and such person's response to the act is one of a person of average sensibilities considering the age of such person.

prosecution admitted that Respondent's conduct did not violate subdivisions (1) through (4). The prosecution stated the facts related to the Count I burglary charge to be that, after being instructed repeatedly not to return to the home of his former wife, Respondent entered the home using a key while she was not there; Respondent intended that Retha Vaughn would be scared to find him inside her home; Retha Vaughn was frightened when she found him in her home and ran out of the house to call the police. As to Count II: two weeks later, Respondent telephoned his former wife repeatedly after being told not to call again.

Respondent argued that subdivisions (5) and (6) violated his right to free speech under the First Amendment to the United States Constitution and article I, section 8, of the Missouri Constitution,[3] in that the prohibitions are overbroad on the face of the statute. Respondent also argued that subdivisions (5) and (6) are vague and violate the right to due process found in the Fourteenth Amendment to the United States Constitution.[4]

The motion court entered an order dismissing both counts, holding that subdivisions (5) and (6) are vague and overbroad. The State appeals.

### III.

■ Whether a statute is constitutional is reviewed *de novo*. *City of Arnold v.*

*Tourkakis*, 249 S.W.3d 202, 204 (Mo. banc 2008). Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision. *State v. Pribble*, 285 S.W.3d 310, 313 (Mo. banc 2009).

■ "The person challenging the validity of the statute has the burden of proving the act clearly and undoubtedly violates the constitutional limitations." *Franklin Cnty. ex rel. Parks v. Franklin Cnty. Comm'n*, 269 S.W.3d 26, 29 (Mo. banc 2008) (citing *Trout v. State*, 231 S.W.3d 140, 144 (Mo. banc 2007)). "[I]f it is at all feasible to do so, statutes must be interpreted to be consistent with the constitutions." *State v. Stokely*, 842 S.W.2d 77, 79 (Mo. banc 1992). "If a statutory provision can be interpreted in two ways, one constitutional and the other not constitutional, the constitutional construction shall be adopted." *Murrell v. State*, 215 S.W.3d 96, 102 (Mo. banc 2007).

■ Statutory terms not defined by the legislature are considered in "their plain or ordinary and usual sense." *Sw. Bell Yellow Pages, Inc. v. Dir. of Revenue*, 94 S.W.3d 388, 390 (Mo. banc 2002) (quoting section 1.090, RSMo 2000). A limiting construction may be imposed only if it is readily susceptible to such a construction. *United States v. Stevens*, ── U.S. ──, ──── ──────, 130 S.Ct. 1577, 1591–92, 176 L.Ed.2d 435 (2010); *see also Ryder Student Transp. Serv., Inc. v. Dir. of Reve-*

---

**3.** The First Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Its counterpart in the Missouri Constitution provides: "That no law shall be passed impairing the freedom of speech, no matter by what means communicated: that every per-

son shall be free to say, write or publish, or otherwise communicate whatever he will on any subject, being responsible for all abuses of that liberty; . . . ." Mo. Const. art. I, sec. 8. The two constitutional provisions are comparable. *Planned Parenthood of Kan. v. Nixon*, 220 S.W.3d 732, 736 (Mo. banc 2007).

**4.** In relevant part: "nor shall any State deprive any person of life, liberty, or property, without due process of law; . . . ."

nue, 896 S.W.2d 633, 635 (Mo. banc 1995) ("Where the language of a statute is clear and unambiguous, there is no room for construction."). "Courts cannot add words to a statute under the auspice of statutory construction." *S.W. Bell Yellow Pages, Inc.*, 94 S.W.3d at 390.

## IV.

## A.

 "The constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within narrowly limited classes of speech." *Hess v. Indiana*, 414 U.S. 105, 107, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973) (internal quotation marks omitted) (alteration omitted). *See, e.g., Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) (obscenity); *Beauharnais v. Illinois*, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (1952) (defamation); *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (fighting words); *see generally Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 124, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (Kennedy, J., concurring) (listing speech that is tantamount to an otherwise criminal act, an impairment of another constitutional right, an incitement to lawless action, or "likely to bring about an imminent harm the State has the substantive power to prevent"). Words in these categories have unprotected features that are essentially "nonspeech" elements, which may be regulated. *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 386, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).

 Generally "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court."

*Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). An exception exists for the First Amendment, under which litigants "are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* at 612, 93 S.Ct. 2908. "Criminal statutes require particularly careful scrutiny, and 'those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application.'" *State v. Moore*, 90 S.W.3d 64, 66 (Mo. banc 2002) (quoting *City of Houston v. Hill*, 482 U.S. 451, 459, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987)).

## B.

 Where conduct and not merely speech is regulated, a statute must be substantially overbroad, not only in an absolute sense but also relative to the statute's plainly legitimate sweep. *United States v. Williams*, 553 U.S. 285, 292, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008); *Broadrick*, 413 U.S. at 615, 93 S.Ct. 2908. "Invalidation for overbreadth is 'strong medicine that is not to be casually employed.'" *Williams*, 553 U.S. at 293, 128 S.Ct. 1830 (quoting *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39, 120 S.Ct. 483, 145 L.Ed.2d 451 (1999) (internal quotation marks omitted)).

 The first step in overbreadth analysis is to construe the challenged statute. *Id.* at 293, 128 S.Ct. 1830. "If the statute may fairly be construed in a manner which limits its application to a 'core' of unprotected expression, it may be upheld against the charge that it is overly broad." *Moore*, 90 S.W.3d at 67; *see also New York v. Ferber*, 458 U.S. 747, 773, 102 S.Ct.

3348, 73 L.Ed.2d 1113 (1982) (upholding statute where protected conduct constituted mere fraction of statute's reach).

### 1. Subdivision (5)

■ Section 565.090.1(5) defines "harassment" to occur when a person "[k]nowingly makes repeated unwanted communication to another person." On its face, this statute criminalizes a substantial amount of protected expression.

The State's first proposed narrowing construction requires a defendant know that the communication is both repeated and unwanted. The State next proposes that the statute be limited to communication directed at an individual and particularized person. Neither construction remedies the problem.

Narrowing constructions cannot save this subdivision of the statute. "Repeated," "unwanted," and "communicate" are simply words that can be applied too broadly. Even with the State's suggested constructions, subdivision (5) still criminalizes any person who knowingly communicates more than once with another individual who does not want to receive the communications. Although the statute purports to criminalize "harassment," subdivision (5), unlike the other subdivisions, does not require the conduct to actually harass in any sense of the word.[5] Rather, it criminalizes a person who "knowingly makes repeated unwanted communication to another person."

A few examples illustrate the statute's potential chilling effect upon political speech as well as everyday communications. For instance, individuals picketing a private or public entity would have to cease once they were informed their protestations were unwanted. A teacher would be unable to call a second time on a student once the pupil asked to be left alone. Salvation Army bell-ringers collecting money for charity could be prosecuted for harassment if they ask a passerby for a donation after being told, "I've already given; please don't ask again." An advertising campaign urging an elected official to change his or her position on a controversial issue would be criminalized.

The State argues that the prohibited speech does not receive First Amendment protection because it inhibits another constitutional right: the privacy interest in avoiding unwanted communication. This exception, however, does not go so far.

■ "[T]he right of every person 'to be let alone' must be placed in the scales with the right of others to communicate." *Rowan v. U.S. Post Office Dep't,* 397 U.S. 728, 736, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970). "The ability of government ... to shut off discourse solely to protect others from hearing it is ... dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner." *Cohen v. California,* 403 U.S. 15, 21, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). Unwanted speech may be regulated where the "degree of captivity makes it

---

**5.** *Cf.* sections 565.090.1(1) ("knowingly communicates a threat to commit a felony to another person and in so doing frightens, intimidates, or causes emotional distress to such person"); 565.090.1(2) ("knowingly uses course language ... and thereby puts such person in reasonable apprehension of offensive physical contact or harm ..."); 565.090.1(3) ("knowingly frightens, intimidates, or causes emotional distress to another person by anonymously making a telephone call ..."); 565.090.1(4) ("knowingly communicate with another person ... seventeen years of age or younger and in so doing and without good cause recklessly frightens, intimidates, or causes emotional distress ..."); 565.090.1(6) ("engages in any other act with the purpose to frighten, intimidate, or cause emotional distress ...").

impractical for the unwilling viewer or auditor to avoid exposure." *See Hill v. Colorado,* 530 U.S. 703, 718, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). Such areas include the home and its immediate surroundings, medical facilities, and routes to and from work. *Id.* at 717, 120 S.Ct. 2480. Unwanted speech may also be regulated where the form of the communication creates a confrontational setting. *See id.* at 717–18, 120 S.Ct. 2480 (citing *Am. Steel Foundries v. Tri–City Cent. Trades Council,* 257 U.S. 184, 204, 42 S.Ct. 72, 66 L.Ed. 189 (1921)).

*Hill* declined to address whether there is a right to avoid unpopular speech in a public forum. *Id.* at 718, 120 S.Ct. 2480. The other cases cited by the State for the proposition that "there is no constitutional right to harass an unwilling recipient" all fall within the unprotected categories listed in *Hill. See, e.g., Rowan,* 397 U.S. at 737, 90 S.Ct. 1484 (upholding no-mail list for homeowners); *Am. Steel Foundries,* 257 U.S. at 204–05, 42 S.Ct. 72 (enjoining picketers whose violence and numbers made entrance into factory "one of running the gauntlet"); *State v. Koetting,* 616 S.W.2d 822, 827 (Mo. banc 1981) ("Because the statute applies only to protect the privacy of persons within their own homes, the statute is not overbroad."); *State v. Nye,* 283 Mont. 505, 943 P.2d 96, 99, 101 (1997) (upholding hate-crime law banning conduct that "damages, destroys, or defaces any property of another"); *State v. Mott,* 166 Vt. 188, 692 A.2d 360, 365 (1997) (upholding abuse-prevention order barring communication by imprisoned ex-husband).

The United States Supreme Court's decision in *Coates,* which invalidated a law barring "annoying" assemblies, applies equally here:

> The First ... Amendment[ ] do[es] not permit a State to make criminal the exercise of the right of [speech] simply because its exercise may be ['unwanted' by] some people. If this were not the rule, the right of the people to [speak] would be continually subject to summary suspension through the good-faith enforcement of a prohibition against ['unwanted'] conduct. And such a prohibition, in addition, contains an obvious invitation to discriminatory enforcement against those whose [communication] is ['unwanted'] because their ideas, their lifestyle, or their physical appearance is resented by the majority of their fellow citizens.

*Coates v. City of Cincinnati,* 402 U.S. 611, 615–16, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).

Section 565.090.1(5) criminalizes communication protected by the First Amendment. "It is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." *Street v. New York,* 394 U.S. 576, 592, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969).

Section 565.090.1(5) is unconstitutionally overbroad. Unconstitutional provisions of a statute should be severed, if possible, saving the remainder of the statute. *Mo. Ass'n of Club Exec. v. State,* 208 S.W.3d 885, 889 (Mo. banc 2006). The statute as a whole is only stricken where

> the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or ... [where] the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

*Id.* Here, six independent definitions of "harassment" comprise the statute, and

none is bound up in the others. Accordingly, subdivision (5) is severed.

### 2. Subdivision (6)

#### i.

 Section 565.090.1(6) criminalizes a person who

> [w]ithout good cause engages in any other act with the purpose to frighten, intimidate, or cause emotional distress to another person, cause[s] such person to be frightened, intimidated, or emotionally distressed, and such person's response to the act is one of a person of average sensibilities considering the age of such person.

The other five categories of harassment outlawed by section 565.090.1 explicitly proscribe communications. In contrast, subdivision (6)'s ban of "[a]ny other act" applies only to conduct. This still leaves the potential for expressive conduct. *See Virginia v. Black*, 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) ("The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech."). "Any other act" necessarily includes expressive conduct not governed by subdivisions (1) through (5).

Reading the elements of the crime in total, the legislature apparently intended to bar the sort of conduct that causes an immediate reaction of fright, intimidation, or emotional distress. Because the legislature intentionally excluded the sort of acts for which there could be good cause, both the intended and the resulting effects must be substantial.[6] Acts that cause immediate *substantial* fright, intimidation, or emotional distress are the sort of acts that inherently tend to inflict injury or provoke violence. Additionally, because the exercise of constitutionally protected acts clearly constitutes "good cause," the restriction of the statute to unprotected fighting words comports with the legislature's intent.

The prohibition against "any other act [done] with the purpose to frighten, intimidate, or cause emotional distress" punishes actions "which by their very occurrence inflict injury or tend to incite an immediate breach of the peace." Such activity is unprotected by the First Amendment. *Chaplinsky*, 315 U.S. at 571–72, 62 S.Ct. 766 (upholding statute barring speech "inherently likely to provoke a violent reaction").

As construed, the statute applies only to acts outside of the First Amendment's protection. Because the statute "limits its application to a 'core' of unprotected expression," it is not overly broad. *Moore*, 90 S.W.3d at 67.

#### ii.

 The trial court found that the terms "frighten," "intimidate," and "emotional distress" make the statute vague. "Frighten" is a word of "common usage and definition." *Koetting*, 616 S.W.2d at 825. "Intimidate" and "emotional distress" are also words with common under-

---

6. This result prevents the statute's application to a number of generally harmless acts. *Cf. State v. Carpenter*, 736 S.W.2d 406, 407–08 (Mo. banc 1987) (holding overbroad statute prohibiting threatened crime where "crime" included minor and insubstantial violations). For example, a child dressed in a frightening condition on Halloween otherwise could be prosecuted for harassment, so long as the intended target felt the minimal level of fright that a reasonable person would feel upon seeing a trick-or-treating toddler. Thus, the construction prevents the legislature from "set[ting] a net large enough to catch all possible offenders, and leav[ing] it to the courts to step inside and say who could be rightfully detained and who could be set at large." *United States v. Reese*, 92 U.S. (2 Otto) 214, 221, 23 L.Ed. 563 (1876).

standing.[7] This Court in *Koetting* found that a specific intent requirement informs a person of ordinary intelligence that his or her actions will result in criminal liability. *Id.* "[A] scienter requirement may mitigate a law's vagueness especially with respect to the adequacy of notice...." *State v. Dale*, 775 S.W.2d 126, 131 (Mo. banc 1989) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)). This statute does not predicate culpability on the subjective reaction of the victim. *Cf., e.g., Coates*, 402 U.S. at 614, 91 S.Ct. 1686 (holding vague statute barring conduct that was "annoying to persons passing by"). Rather, subdivision (6) utilizes a reasonable person standard and, thus, places the public on notice of the level at which conduct creates culpability. Subdivision (6) provides reasonable notice of the conduct it prohibits.

The trial court also found the "without good cause" requirement renders the statute vague, because it creates a subjective standard and places too much discretion into the hands of law enforcement officials. This Court previously has held "good cause" to provide sufficient notice as to the criminal conduct proscribed. *See State v. Davis*, 469 S.W.2d 1, 5 (Mo.1971).

In *Davis*, the Court evaluated a nonsupport statute that criminalized the failure to provide for a spouse or child without good cause. *Id.* The Court determined "good cause" to mean "a cause or reason sufficient in law: one that is based on equity or justice or that would motivate a reasonable man under all the circumstances." *Id.* (quoting *Webster's Third New International Dictionary*). Although the statute there involved a pre-

existing legal duty, a similar construction of "good cause" applies here.

"Good cause" in subdivision (6) means "a cause that would motivate a reasonable person of like age under the circumstances under which the act occurred." This construction both gives notice to potential actors as well as provides a sufficiently concrete standard, so as to mitigate the potential for arbitrary enforcement.

### V.

Section 565.090.1(5) is unconstitutionally overbroad; the trial court's judgment as to that subdivision is affirmed. The judgment as to section 565.090.1(6) is reversed, and the case is remanded.

All concur.

---

**7.** "Emotional distress," although typically found in common-law torts, also is utilized in Missouri's stalking statute along with both "frighten" and "intimidate." *See* section 565.225, RSMo Supp.2008.