STATE of Missouri, Respondent,

v.

Dennis BLANKENSHIP, Appellant.

No. SC 93084.

Supreme Court of Missouri,
En Banc.

Dec. 10, 2013.

Kim C. Freter, a solo practitioner in Clayton, for Blankenship.

Jennifer A. Rodewald of the Attorney General's Office in Jefferson City, for the State.

GEORGE W. DRAPER III, Judge.

Dennis Blankenship (hereinafter, "Defendant") appeals the trial court's judgment and sentence entered after finding him guilty of one count of attempted use of a child in a sexual performance, section 568.080, RSMo 2000.[1] Defendant claims a violation of his constitutional right to protected speech and challenges the sufficiency of the evidence. This Court has jurisdiction because the case involves the validity of a state statute. Mo. Const. art. V, sec. 3. There was no error. The trial court's judgment is affirmed.

**Factual and Procedural Background**

Viewed in the light most favorable to the verdict, the facts are as follows: Defendant is Victim's uncle. Defendant lived in Georgia but visited Victim and her family in Missouri approximately once a year. During a family visit in June 2010, Victim and Defendant's daughter exchanged e-mail addresses.

On June 23, 2010, Defendant e-mailed Victim with his personal e-mail address, stating he alone had access to the account. After Victim acknowledged Defendant on e-mail, Defendant began communicating with her. Defendant wanted to know whether he could flirt with Victim. Victim responded, "Yeah, No, kind of, LOL." Defendant then sent the following response:

Kind of. You kind of don't want me to flirt with you or you kind of do want me to flirt with you? I was thinking of a truth and dare game where you have to tell the truth and do the dare. You answer the question, but you can't just say yes as the answer. You have to explain your answer and perform the dare as though I'm watching you and if you want to ask me a question and dare me then put it at the end of your message and say pass and it will be my turn to ask you again based on your answers. Do you want to play? The questions will get personal and the dares more daring as we go. If you want to play, answer the question at the top and say let's play or take the first turn with a question and a dare. Bye.

Victim was disturbed by this e-mail and showed it to her mother.

Victim's mother contacted the police and was put in touch with Sergeant Adam Kavanaugh (hereinafter, "Sgt.Kavanaugh"), the supervisor of the Special Investigations Unit with the Saint Louis County Police. After receiving Victim's permission, Sgt. Kavanaugh assumed Victim's e-mail address and corresponded with Defendant as if he were Victim.

Sgt. Kavanaugh, posing as Victim, and Defendant engaged in extensive e-mail communication. Defendant requested Victim perform specific sexual acts and report to him that she had completed these acts.

On July 7 and 8, 2010, Defendant and Sgt. Kavanaugh exchanged thirty-six e-mails. Defendant began by prompting Victim to remove her shirt and asking if she could perform the dare with him watching. Defendant then dared Victim to remove all of her clothes and inform him when she completed this task. Sgt. Kavanaugh, responding as Victim, stated the task was completed.

Based upon that response, Defendant then instructed Victim to cup her breasts

---

1. All further statutory references herein are to RSMo 2000.

and squeeze them. The response Defendant received indicated Victim already put her clothes back on. Defendant then stated, "If you ask I'll tell you what you did to me when you said you were naked and what I'm doing right know [sic]. [B]e warned it [sic] naughty[.]" Sgt. Kavanaugh asked Defendant what he was doing, and Defendant responded:

[Y]ou made something grow between my legs. I took off my pants to see what happened. My penis is hard and I started to rub it then stroke it up and down. I am going to cum soon. W[ ]ould you like to watch me mast[u]rbate? If you say yes I'm going t[o] go all over myself.

Sgt. Kavanaugh asked how Victim could see Defendant masturbate. Defendant responded, "It may have to actually wait until my next trip to Missouri. I'll talk detail[s] after you answer."

The next morning, Defendant began e-mailing Victim, instructing her to put her hand inside her shirt, touch her bare breast, and respond to him that she followed his instructions. Sgt. Kavanaugh responded that Victim completed the dare. Defendant then continued in a series of e-mails, instructing Victim to place her hand on the inside of her thigh, place her hand between her legs outside her clothes, take her pants off and "rub [her]self on top of [her] panties," and to "slip [her] hand inside [her] panties and rub [herself]." Sgt. Kavanaugh responded "done" to each of Defendant's directions.

Defendant continued give orders to Victim, telling her to place a finger inside her "pussy." Sgt. Kavanaugh responded "done," and Defendant stated he was going to go to bed to "finish mast[u]rbating thinking about [Victim] touching [herself]." Defendant also instructed Victim to masturbate while thinking of him and to tell him about it the next day. Sgt. Kavanaugh responded "done."

Defendant continued sending Victim sexually explicit e-mails and stories in July. Defendant asked Victim, "Did you know that I mast[u]rbate thinking about you and the things I want to do to and with you?" Defendant dared Victim to lick her nipples. Defendant asked if Victim would rub his penis until he ejaculated and if she would like to practice giving oral sex on him. Defendant also asked to see her naked and watch her masturbate. Then Defendant instructed Victim to "touch [her]self[,] give [her]self pleasure[,] and as [her] pussy g[o]t wet[,] put [her] fingers in side [sic] then pull them out and place them in [her] mouth." Sgt. Kavanaugh responded "done."

In September, Defendant told Victim to touch her nipples with her fingers and squeeze them. Sgt. Kavanaugh responded that Victim would do that for Defendant. Defendant asked Victim if she wanted to masturbate him and told her that he might show her his penis some time. In the final e-mail, Defendant told Victim he would show her his penis the next time he saw her, and he wanted to see her naked body. Defendant sent Victim a total of 67 e-mails between June 22 and September 26, 2010.

On December 1, 2010, Victim's mother called Defendant, confronting him about these e-mails. Victim's mother recorded the telephone call with equipment provided by Sgt. Kavanaugh. Defendant admitted to sending the e-mails, explaining that he wanted to "shock" Victim because he thought she had "always been a little more sexual for her age than she should be." He also stated this was a sexual release for him and exciting to receive a positive response. Defendant also stated that had Victim provided a negative response, he probably would not have stopped. Defendant admitted he asked Victim to have sex with him the next time he was in Missouri but claimed that was "all fantasy."

Defendant was arrested and charged with of one count of attempted use of a child in a sexual performance, section 568.080. Following all of the evidence presented at the bench trial, the trial court found Defendant guilty of attempted use of a child in a sexual performance. The trial court sentenced Defendant to a term of four years' imprisonment, suspended execution of the sentence, placed Defendant on five years' probation, and ordered him to serve a sixty-day shock incarceration term. Defendant appeals.

## Constitutionally Protected Speech

. ■ Defendant claims the trial court erred in overruling his objection that section 568.080, as applied, violated his rights to protected speech as guaranteed by the First Amendment to the United States Constitution and Mo. Const. art. I, sec. 8. Defendant asserts his e-mail exchange with an officer posing as a sixteen-year-old did not contemplate or solicit a criminal act and, therefore, was protected speech.

■ This Court conducts a *de novo* review when determining whether a statute is constitutional. *State v. Vaughn,* 366 S.W.3d 513, 517 (Mo. banc 2012). A statute is "presumed valid and will not be held unconstitutional unless it clearly contravenes a constitutional provision." *St. Louis County v. Prestige Travel Inc.,* 344 S.W.3d 708, 712 (Mo. banc 2011). As such, the burden of proof rests with the challenging party to prove that a statute "clearly and undoubtedly violates the constitution." *State v. Young,* 362 S.W.3d 386, 390 (Mo. banc 2012).

Section 568.080.1 provides:

A person commits the crime of use of a child in a sexual performance if, knowing the character and content thereof, the person employs, authorizes, or induces a child less than seventeen years of age to engage in a sexual perform-

ance or, being a parent, legal guardian, or custodian of such child, consents to the participation by such child in such sexual performance.

Defendant believes his e-mails constituted mere fantasy speech and the State failed to meet its burden of proving the speech restriction was permissible constitutionally.

■ The "First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). Significantly, "[t]he constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within narrowly limited classes of speech." *Vaughn,* 366 S.W.3d at 518 (*quoting Hess v. Indiana,* 414 U.S. 105, 107, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973)).

■ Yet, the right to free speech "is not absolute at all times and under all circumstances." *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Id.* at 571–72, 62 S.Ct. 766. Unprotected speech includes "the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* at 572, 62 S.Ct. 766. "It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id.; see also Simon & Schuster, Inc. v. Mem-*

bers of *N.Y. State Crime Victims Bd.,* 502 U.S. 105, 124, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (Kennedy, J., concurring) (indicating that the constitution does not protect obscenity, defamation, words tantamount to an act otherwise criminal, words that impair some other constitutional right, speech that incites lawless action, and speech calculated or likely to bring about imminent harm the state has the substantive power to prevent).

This Court has upheld the validity of statutes against allegations of First Amendment infringement. In *State v. Roberts,* 779 S.W.2d 576, 579 (Mo. banc 1989), this Court found that it was illegal to engage not only in physical sexual acts of prostitution but also in the negotiations to engage in those acts. "Because the words uttered as an integral part of the prostitution transaction do not have a lawful objective, they are not entitled to constitutional protection." *Id.*

Similarly, Defendant's speech here was an integral part of his attempt to induce a child for the purpose of engaging in a sexual performance; this is not a lawful objective. Fantasy speech "is not for the purpose of actually engaging in the imagined conduct." *State v. Pribble,* 285 S.W.3d 310, 316 (Mo. banc 2009). Defendant's speech went beyond mere fantasy; he directed a child to perform his commands, resulting in the child engaging in sexual conduct.

Section 568.080 does not criminalize mere fantasy speech or other speech that would be entitled to constitutional protections. Defendant attempted to induce the child to engage in a sexual performance. Defendant was not punished for fantasy speech. The statute is not unconstitutional as applied to him.

### Insufficient Evidence

▮▮▮ This Court's review of a challenge to the sufficiency of the evidence supporting a criminal conviction is limited to a determination of whether the trier of fact reasonably could have found the defendant guilty. *State v. Vandevere,* 175 S.W.3d 107, 108 (Mo. banc 2005). "[A]ppellate courts do not weigh the evidence but accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences." *State v. Wooden,* 388 S.W.3d 522, 527 (Mo. banc 2013).

### "Performance"

▮▮▮ Defendant claims that there was no attempted use of a child in a sexual performance pursuant to section 568.080 because "performance" encompasses something more than mere words. Defendant claims the conduct was not a "performance," and therefore, there was insufficient evidence as a matter of law to sustain his conviction.

Section 568.080.1 prohibits the use of child in a sexual performance. "Sexual performance" is defined as "any performance or part thereof, which includes sexual conduct by a child who is less than seventeen years of age." Section 556.061(31). However, "performance" is not defined statutorily.

▮▮▮ When analyzing a criminal statute, this Court must discern the legislature's intent from the statutory language and give effect to that intent. *State v. Moore,* 303 S.W.3d 515, 520 (Mo. banc 2010). This Court considers the words used in their plain and ordinary meaning. *St. Louis Police Officers' Ass'n v. Board of Police Com'rs of City of St. Louis,* 259 S.W.3d 526, 528 (Mo. banc 2008). "When the Legislature has not defined a word, we can examine other legislative or judicial meanings of the word, and can also ascer-

tain a word's plain and ordinary meaning from its definition in the dictionary." *State v. Power,* 281 S.W.3d 843, 847 (Mo. App.E.D.2009); *see also Moore,* 303 S.W.3d at 520. "Performance" has been defined by prior case law using the plain and ordinary meaning as "presentations, especially a theatrical one, before an audience." *State v. George,* 717 S.W.2d 857, 859 (Mo.App.S.D.1986) (citation omitted); *see also State v. Butler,* 88 S.W.3d 126, 129 (Mo.App.S.D.2002).

Defendant's assertion that a "performance" must encompass something more than mere words fails. In *Butler,* the defendant (hereinafter, "Butler") asserted the evidence was insufficient for lack of a visual performance, and hence, he should not have been convicted pursuant to section 568.080. Butler made a series of sexually graphic telephone calls to the victim. In his conversation with the victim, Butler instructed her to perform specific sexual acts and informed her he wanted to have sex with her. *Butler,* 88 S.W.3d at 127. The court found that there was no support for the proposition that a performance is limited to only a visual performance. *Id.* at 129–30. The court further stated that even though the victim's response to Butler's instructions was not in front of a viewing audience, "section 568.080 prohibits the exploitation of young children in pornographic presentations" and Butler exploited the victim "in a way little different from any exploitation suffered in a visual sexual presentation." *Id.* at 130.

The legislature enacted section 568.080 to prevent the sexual exploitation of minor children. Restricting the application of section 568.080 to visual performances only would frustrate the purpose of the statute.

Defendant was convicted of attempting use of a child in a sexual performance by inducing Victim to engage in sexual conduct for his own gratification over a protracted period of time. Under the circumstances in this case, there is no doubt Defendant exploited Victim in the way in which the legislature tried to prevent. There was sufficient evidence to find Defendant attempted to use a child in a sexual performance.

## Substantial Step

■■■ Defendant claims the state failed to prove beyond a reasonable doubt that he committed the crime of attempted use of a child in a sexual performance. Defendant believes there was insufficient evidence to support a substantial step was taken toward the commission of the crime. Defendant asserts there was no evidence that was indicative of an attempt to use a child in a sexual performance because he did not request the Victim to undertake any action that would constitute a sexual performance.

■■■ "A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Section 564.011.1. Accordingly, the attempt statute only requires a showing that a defendant had the intent to commit the underlying offense and took a substantial step toward its commission. *State v. Faruqi,* 344 S.W.3d 193, 202 (Mo. banc 2011).

Defendant argues that because he did not ask the Victim to send any sexually explicit media, and he did not intend to view or listen to Victim engaging in a sexual action with another person, he did not take a substantial step, which would preclude the application of the attempt statute. However, Defendant's argument fails in that he ignores the statutory definition of "sexual conduct."

As noted previously, "sexual performance" is defined as "any performance or part thereof, which includes sexual conduct

by a child who is less than seventeen years of age." Section 556.061(31). "Sexual conduct" is further defined as "acts of human masturbation; deviate sexual intercourse; sexual intercourse; or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or the breast of a female in an act of apparent sexual stimulation or gratification." Section 556.061(29).

Defendant instructed Victim on multiple occasions to masturbate. Defendant coached Victim how to stimulate herself sexually by touching her body. There was sufficient evidence from which the finder of fact could determine Defendant took a substantial step toward the use of a child in a sexual performance.

**Conclusion**

For the foregoing reasons, the judgment is affirmed.

All concur.