

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JACKSON COUNTY, MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD87106 |
| | ) | |
| JERRY HARDY STAMPS, | ) | Opinion filed:  February 25, 2025 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**HONORABLE JASON M. HOWELL, JUDGE**

Division One:  Gary D. Witt, Presiding Judge,
Lisa White Hardwick, Judge and Edward R. Ardini, Jr., Judge

Jerry Stamps appeals the judgment of the Circuit Court of Jackson County ("trial court"), entered after a bench trial, finding him guilty of violating a Jackson County ordinance prohibiting disorderly conduct, and ordering him to pay a $1,000 fine. Stamps's disorderly conduct conviction stems from events occurring at the Civil Records Department in the Jackson County courthouse, where he berated and threatened county employees for not providing him with information he believed he was entitled to under Missouri's Sunshine Law. On appeal, Stamps argues his conviction should be reversed because the ordinance is "unconstitutional on its face" and the statements he made were

protected by the First Amendment to the United States Constitution.[1] Finding Stamps waived his constitutional challenges, and even if he had not, he would not prevail on the claims raised in this appeal, we affirm.

## Factual and Procedural Background

On August 26, 2022, Stamps was charged by uniform citation, and subsequently by information, with disorderly conduct for "using profanity and threating [sic] to follow courthouse employees after leaving their job" in violation of section 5531 of the Jackson County Code (the "Ordinance"). In pertinent part, the Ordinance provides that:

> No person shall provoke a breach of the peace by committing any of the following acts:
>
> a. Use threatening, offensive, disorderly, abusive, or insulting language, conduct, or behavior.

Stamps was tried in the Jackson County Municipal Court ("municipal court") in the fall of 2023; he was represented by counsel during the municipal proceedings. The municipal court found Stamps guilty of violating the Ordinance, and counsel filed an application for trial *de novo* on Stamps's behalf. *See* § 479.200.2, RSMo 2016 (in a case tried before a municipal judge without a jury, "the defendant shall have a right of trial de

---

[1] "The First Amendment, applicable to the States through the Fourteenth Amendment, provides that 'Congress shall make no law . . . abridging the freedom of speech.'" *Virginia v. Black*, 538 U.S. 343, 358 (2003). "The protections afforded by the First Amendment, however, are not absolute, and we have long recognized that the government may regulate certain categories of expression consistent with the Constitution." *Id.*

novo before a circuit judge or upon assignment before an associate circuit judge"; the defendant shall file an application for a trial *de novo* within ten days after judgment).[2]

A trial *de novo* was held on April 1, 2024. Stamps appeared *pro se* at the trial and has since represented himself in this matter, including on appeal.[3] Jackson County (the "County") presented the testimony of four witnesses at trial: three employees of the Civil Records Department and a deputy with the County Sheriff's Office, all of whom worked at the County courthouse.

The witnesses testified that on August 19, 2022, Stamps arrived at the Civil Records Department seeking information relating to Missouri's Sunshine Law. The employee working at the window ("Employee") was unable to provide Stamps with the information he requested, and she contacted her supervisor ("Supervisor"). Supervisor told Stamps they were unable to provide him with the information he sought. Stamps "berat[ed]" and "talk[ed] down" to Employee and Supervisor, and filmed his interaction with them.

Stamps returned to the Civil Records Department a week later, on August 26th, again filming his visit. Stamps was "more belligerent" and "us[ed] profanity." He was "yelling at [Employee], berating her, calling her names, calling her a bitch." Employee

---

[2] "[T]he concept of a trial de novo reflects, as the name implies, a new proceeding in most respects and, in a criminal or quasi-criminal case, it is a new prosecution." *City of Raymore v. O'Malley*, 527 S.W.3d 857, 862 (Mo. App. W.D. 2017). "The trial de novo proceeds as if no action had been taken in the municipal division and as though the case had originated in the de novo court rather than in the municipal court." *Id.* at 863. "The accused enjoys the presumption of innocence, the prosecution has the burden of proof and the previous conviction in the municipal court is ignored." *Id.* "The de novo court does not sit as an appellate court to consider alleged irregularities in the lower court." *Id.*

[3] According to a motion for continuance Stamps filed prior to the trial *de novo*, his "attorney had to remove himself for unrelated reasons."

"shut the blinds" to the window, but Stamps kept knocking on "the frame of the window" and asking—using Employee's first and last name—"are you going to help me; I can hear you breathing."

Stamps stopped Supervisor in the hallway on her way back from lunch. Stamps repeatedly asked for Supervisor's name, which she did not feel comfortable giving him after his treatment of Employee. Supervisor took over for Employee at the window. Stamps was "very aggressive," and he called Supervisor a "bitch" multiple times, a "cunt," and a "Karen." Stamps told Supervisor her "elevator [didn't] go to the top, meaning [she is] stupid," and she "needed to go home and be with [her] cat because [she] was lonely."

Stamps told Employee and Supervisor he would wait until after work and "figure out what kind of cars [they] were driving in the parking lot." Supervisor took this to mean he was going to attempt to follow her home. Employee took his statement as a threat, because before he said it he was knocking on the window saying he could hear her breathing. During his interactions with Employee and Supervisor, Stamps would "drop his voice very low, and then he would raise it" in an attempt "to make them falter and just frazzle and upset them."

Stamps was at the courthouse on August 26th for over an hour. Employee eventually contacted a deputy with the County's Sheriff's Office ("Deputy") who was providing security at the courthouse. Employee advised Deputy that Stamps was refusing to move away from the window to allow them to help other customers. After Deputy arrived, Stamps still refused to leave. Deputy "had them open up another window" to assist other customers. Shortly after, Deputy received a radio broadcast from his captain directing him

4

to speak with Supervisor. When he met with Supervisor, she was "trembling, crying, sobbing heavily" to the point that "she was having trouble talking." She and Employee told Deputy about their interactions with Stamps. Deputy then placed Stamps under arrest at the courthouse for disorderly conduct.

Supervisor testified at trial that she had suffered a panic attack in her office after her interaction with Stamps. Employee testified that her interaction with Stamps caused her "a lot of trauma" and she "still ha[s] problems with it."

Stamps did not present any evidence at trial. He began his closing argument by stating, "in this country we have freedom of speech." He then cited a Missouri Supreme Court decision, *State v. Swoboda*, 658 S.W.2d 24 (Mo. banc 1983), asserting in that case the Court held a statute "to be overly broad because it sought 'to punish more than face-to-face words,'" and "[m]uch of that reasoning is no less applicable in the present case," as "[t]his statute attempts to go much further than fighting words." He concluded by arguing:

> In a recent case ruling by the Supreme Court, *Counterman v. Colorado*[4], that in true threats the case is the first in - - in true threats, the cases that the First Amendment requires that the government prove that the defendant acted with a culpable mental state and not merely that the words were objectively threatening. Because of that that we - - that the defense believes this ordinance is unconstitutionally applied.

The trial court "presume[d]" the Ordinance was constitutional, found Stamps guilty of violating the Ordinance, and ordered him to pay a $1,000 fine. Stamps appeals.

---

[4] 600 U.S. 66 (2023).

**Standard of Review**

"Upon review of a municipal ordinance violation, we must affirm the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *City of Joplin v. Marston*, 346 S.W.3d 340, 341 (Mo. App. S.D. 2011). "The evidence and reasonable inferences therefrom are viewed in the light most favorable to the municipality; all evidence and inferences to the contrary are to be disregarded." *Id.* (internal marks omitted).

This Court has jurisdiction to review the "validity and constitutionality" of an ordinance. *Bennett v. St. Louis Cnty., Mo.*, 542 S.W.3d 392, 396-97 (Mo. App. E.D. 2017). "The constitutional validity of [an] ordinance is a question of law meriting *de novo* review." *City of Sullivan v. Sites*, 329 S.W.3d 691, 693 (Mo. banc 2010). "Ordinances are presumed valid and lawful," and "the party challenging the validity of the ordinance carries the burden of proving the municipality exceeded its constitutional or statutory authority." *Bennett*, 542 S.W.3d at 397 (internal marks omitted). A law "will be found unconstitutional only if [it] clearly contravene[s] a constitutional provision." *State v. Vaughn*, 366 S.W.3d 513, 517 (Mo. banc 2012).

**Analysis**

Stamps raises two points on appeal, each asserting the trial court erred in finding him guilty of violating the Ordinance. In his first point, he asserts the Ordinance is unconstitutional "in that it criminalizes speech that falls within the scope of the United States Constitution's First Amendment protection of Free Speech. The US Supreme Court has held that a statute that prohibits both protected and unprotected activity is

6

unconstitutional on its face." In his second point, Stamps asserts he "did not make any threats of violence, and the statements he made fall within the scope of the United States Constitution's First Amendment protection of Free Speech."

The County responds that Stamps waived his "facial constitutional overbreadth claim" asserted in Point I and his "as-applied constitutional claim" asserted in Point II, by failing to raise these claims at the earliest opportunity. We agree.

"Constitutional violations are waived if not raised at the earliest possible opportunity." *State ex rel. York v. Daugherty*, 969 S.W.2d 223, 224 (Mo. banc 1998). "Although in some situations that point of opportunity may vary, in criminal cases where the statute upon which prosecution itself is based is attacked constitutionally, the earliest point is defined by court rule." *City of Kan. City v. McGary*, 218 S.W.3d 449, 452 (Mo. App. W.D. 2006). "Supreme Court Rule 24.04(b)(2) requires that such issues be raised by motion before trial or be waived," and Rule 24.04 applies in actions for ordinance violations. *See McGary*, 218 S.W.3d at 452; *see also* Rule 37.74 ("All trials de novo shall proceed in the manner provided for the trial of a misdemeanor by the rules of criminal procedure."); *Marston*, 346 S.W.3d at 341 ("the rules of criminal procedure apply to the prosecution of ordinance violations").

Pursuant to the law described above, Stamps was required to raise his constitutional challenges by motion before trial. However, the record before us does not reflect any constitutional challenge was raised until Stamps's closing argument. We therefore find that Stamps waived his constitutional claims by not raising them in a timely manner. *See McGary*, 218 S.W.3d at 452 (finding the appellant's challenges to the constitutionality of

7

ordinances were untimely, and thus waived, where appellant first raised the challenges after the court's finding of guilt, and noting that "[c]onstitutional challenges first brought at the close of the state's evidence and at the close of all of the evidence have been held to be untimely").

In his reply brief, Stamps contends he timely raised his constitutional claims—and thus they are not waived—because his attorney in the municipal proceedings "presented the constitutional challenge to the Municipal Court." But nothing in the record before us supports this contention. There is no document in the legal file that reflects any constitutional challenge was raised prior to Stamps's closing argument in the trial *de novo*. As the appellant, Stamps has the duty to provide this Court "with a complete record of the underlying proceedings which is necessary to determine the issues he raises on appeal." *City of St. Louis v. Hill*, 488 S.W.3d 156, 160 (Mo. App. E.D. 2016). Stamps has failed to provide us with a record to support his contention that his constitutional challenges were raised in municipal court, and "[r]ecitals in an appellant's brief that are unsupported by the record on appeal are insufficient to supply this Court with the record of trial court proceedings necessary for our review." *State v. Myers*, 619 S.W.3d 578, 586 (Mo. App. E.D. 2021). Without any record to support his clam, we reject Stamps's contention that his constitutional challenges were timely raised.

But even if Stamps had timely raised his constitutional challenges, we would nonetheless find his claims on appeal lack merit. In his first point, Stamps appears to raise a facial challenge to the Ordinance on the ground that it is overbroad. The overbreadth doctrine operates to invalidate laws that prohibit both protected and unprotected First

Amendment activity. *See Bennett*, 542 S.W.3d at 397-98. In such a challenge, the "court must evaluate the ordinance generally, instead of specifically to plaintiff's particular set of circumstances," to "determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Id.* In his second point, Stamps appears to raise an "as-applied" constitutional claim, arguing the statements he made are protected by the First Amendment. *See id.* at 397 (an as-applied challenge requires the challenger "to argue that the Ordinance was unconstitutionally applied to their individual circumstances"). A facial challenge and an as-applied challenge involve different analyses, with "[a] facial challenge to the constitutionality of an ordinance [being] more challenging than an as-applied challenge." *Id.*[5]

Although Stamps appropriately raises these challenges in two separate points relied on, his brief only contains one argument section in violation of Rule 84.04(e). *See State v. Salsman*, 686 S.W.3d 376, 388 (Mo. App. S.D. 2024) ("Not providing a separate argument for each individual point relied on warrants denial of the point."); *Sugar Ridge Props. v. Merrell*, 489 S.W.3d 860, 873 n.8 (Mo. App. S.D. 2016) ("Individual points relied on necessarily present separate arguments and deserve separate analysis."). And Stamps's one argument section provides no support for the overbreadth claim asserted in his first point relied on.

---

[5] Facial and as-applied challenges also involve different remedies: "A successful as-applied challenge bars a law's enforcement against a particular plaintiff, whereas a successful facial challenge results in complete invalidation of a law." *Bennett*, 542 S.W.3d at 397 (internal marks omitted).

As discussed above, a facial challenge to an ordinance as overbroad requires analysis of whether the ordinance reaches a substantial amount of constitutionally protected conduct. *See Bennett*, 542 S.W.3d at 397-98. However, other than setting forth the provisions of the Ordinance, Stamps does not even refer to the Ordinance in his argument, let alone contend or discuss how it reaches a substantial amount of constitutionally protected conduct. Stamps simply does not advance any argument that the Ordinance is overbroad. Rather, he argues the particular statements he made were not "true threat[s], did not convey a message of physical harm, or any violence, and the message was not one to cause an immediate violent response by a reasonable recipient," and thus his statements were protected by the First Amendment. This is effectively an as-applied constitutional argument. *See State v. Wooden*, 388 S.W.3d 522, 525-27 (Mo. banc 2013) (appellant's argument that statements he made were protected speech, and thus statute criminalizing those statements was unconstitutional, was an as-applied challenge). As previously explained, an as-applied challenge is distinct from a facial challenge, and an argument supporting an as-applied challenge does not establish a facial claim.

Stamps's failure to make any argument concerning the overbreadth of the ordinance at issue is fatal to the claim raised in Point One. *See Atkins v. Dep't of Bldg. Reguls., City of Springfield*, 596 S.W.2d 426, 434 (Mo. 1980) ("A party who asserts the unconstitutionality of a statute or ordinance bears the burden of supporting that contention by at least relating his argument to the statute or ordinance at hand."); *Vaughn*, 366 S.W.3d at 518 ("Invalidation for overbreadth is 'strong medicine that is not to be casually employed.'" (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008))); *see also*

10

*Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 124 (Mo. App. W.D. 2001) ("An appellant must develop the contention raised in the point relied on in the argument section of the brief," and "[a]rguments raised in the points relied on that are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review."). Accordingly, even if Stamps had not waived his constitutional claims, we would deny Point I.

We would also deny Point II, because Stamps has not carried his burden of demonstrating that the Ordinance, as applied to him, clearly contravenes the First Amendment.

"[T]he right to free speech 'is not absolute at all times and under all circumstances.'" *Wooden*, 388 S.W.3d at 526 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571 (1942)). "'There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem,' which include 'the insulting or fighting words—those which by their very utterance inflict injury or intend to incite an immediate breach of the peace.'" *State v. Collins*, 648 S.W.3d 711, 717 (Mo. banc 2022) (quoting *Chaplinsky*, 315 U.S. at 571-72). "This Court recognizes generally 'such offensive language can be statutorily prohibited only if it is personally abusive, addressed in a face-to-face manner to a specific individual and uttered under circumstances such that the words have a direct tendency to cause an immediate violent response by a reasonable recipient.'" *Id.* at 718 (quoting *Swoboda*, 658 S.W.2d at 26).

Taken as a whole, Stamps's interactions with Employee and Supervisor had the hallmarks of "fighting words": his statements were personally abusive, addressed to them individually in a face-to-face setting, and under circumstances such that his words would tend to cause an immediately violent response by a reasonable recipient. In addition to threatening to follow Employee and Supervisor home from work, Stamps yelled at them, attempted to "frazzle" and "upset" them, insulted them, and called them profane names, such as "bitch" and "cunt." When Employee attempted to distance herself from him by closing the window, Stamps would not leave, continued to knock on her window, and told her he could hear her breathing. He even refused to leave the window after law enforcement was called to deescalate the situation. Stamps engaged in this abusive treatment of Employee and Supervisor for over an hour, causing Supervisor to suffer a panic attack and Employee to still experience trauma years later. The fact that Supervisor and Employee reacted emotionally instead of responding with violence is immaterial. *See Vaughn*, 366 S.W.3d at 521 ("Acts that cause immediate substantial fright, intimidation, or emotional distress are the sort of acts that inherently tend to inflict injury or provoke violence." (emphasis omitted)). As the trial court stated in finding Stamps guilty, "You talk like that to the wrong person it'll provoke physical violence. Just because somebody's not capable of it doesn't mean you didn't do it."

Although we find Stamps waived his constitutional challenges, were we to resolve this appeal on the merits we would nonetheless deny Point II: Stamps spoke unprotected

12

"fighting words" and the Ordinance punished Stamps for his unprotected communications. The Ordinance, therefore, was not unconstitutional as applied to him.[6]

## Conclusion

The judgment of the trial court is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.

---

[6] Stamps also argues that his statements were not "true threats." "'True threats' of violence is another historically unprotected category of communications." *Counterman v. Colorado*, 600 U.S. 66, 73 (2023). Because Stamps's communications were unprotected fighting words punishable under the Ordinance, we need not consider whether his communications were "true threats."