328 S.W.3d 466 (2010)
In the Interest of: J.M.
No. ED 94515.
Missouri Court of Appeals, Eastern District, Division Three.
December 21, 2010.
*468 Kathryn L. Pierce, St. Louis, MO, for appellant.
Brian P. Seltzer, Clayton, MO, Richard J. Childress, St. Louis, MO, for respondents.
Michael E. Myers, St. Louis, MO, Guardian Ad Litem.
LAWRENCE E. MOONEY, Judge.
On October 20, 2009, D.M., an 18-year-old mother who was under the jurisdiction of the family court, appeared pro se for a hearing for a periodic review of her case. The trial court ordered that Mother's 22-month-old child be taken into protective custody due to "numerous neglectful acts." On January 15, 2010, the trial court conducted a hearing on whether Mother had been neglectful. After this hearing, which we shall later recount in detail, the trial court concluded that Mother was guilty of a pattern of neglectful behavior.
Initially, we address the juvenile officer's timely motion to supplement the legal file. The proposed supplementary material includes the court minutes and documents from Mother's own juvenile case, and three exhibits admitted at the child's adjudication and disposition hearings.[1] Counsel for the juvenile officer admits that he neither asked the family court to take judicial notice of the files purportedly containing these documents nor did he proffer the majority of these documents for admission into evidence. The only documents in the juvenile officer's proposed supplemental legal file that were admitted into evidence in the child's case are letters and reports admitted as the guardian ad *469 litem's exhibit 1 and the juvenile officer's exhibits 1 and 2.
Rule 81.12(f) permits filing a supplement to the record on appeal when "anything material is omitted from the record on appeal." Documents not considered by the trial court and not made part of the record below, however, cannot be introduced into the record on appeal, Winston v. Dir. of Revenue, 137 S.W.3d 502, 505 (Mo.App. E.D.2004), and we cannot consider them, Southwestern Bell Media, Inc. v. Ross, 794 S.W.2d 706, 708 (Mo.App. E.D.1990). Furthermore, the trial court's mere knowledge that a document or other evidence exists is insufficient to allow introduction of such evidence for the first time on appeal. Marc's Restaurant, Inc. v. CBS, Inc., 730 S.W.2d 582, 584 (Mo.App. E.D.1987).
The legislature has declared that one or more divisions in certain circuits, including St. Louis County, shall be designated as "family courts." Section 487.010.1 RSMo. (2000).[2] The family court shall have exclusive original jurisdiction to hear and determine juvenile proceedings. Section 487.080. Missouri's unified family-court system seeks to create a single court with comprehensive authority over all cases involving children and their families. In re S.M.H., 160 S.W.3d 355, 361 (Mo. banc 2005)(4-3 decision). To the extent possible, one specially-trained judge is to address the legal and accompanying emotional and social issues challenging each family in order to achieve a more efficient and compassionate system of one judge for one family. Id.
As a general rule, a court will take judicial notice of its own records. State v. Pennick, 364 S.W.2d 556, 559 (Mo. 1963). Under certain circumstances, a court may take judicial notice of its own record in other cases; however, when the record in another case forms an essential element of a party's claim or defense, then the record itself must be introduced in evidence, absent an admission of its contents by the opposing party. Id. (quoting Richards Brick Co. v. Wright, 231 Mo.App. 946, 82 S.W.2d 274, 279 (Mo.App.St.L.Dist. 1935)); Meiners Co. v. Clayton Greens Nursing Ctr., Inc., 645 S.W.2d 722, 724 (Mo.App. E.D.1982). And under circumstances where a trial court, on its own motion, may take judicial notice of its records in another case, in the event that it does so, the court should disclose on the record the precise matters so considered. Pennick, 364 S.W.2d at 559.
The family court's unified approach of one judge for one family may indeed call for greater use of judicial notice. But the record before us does not indicate that the judge took judicial notice of either Mother's case file or the child's. Nor was any evidence from Mother's case proffered or admitted into evidence in the child's hearing. Further, Mother's attorney expressly articulated the need for a clear record in each of the two cases during the adjudication hearing on the child's case. Therefore, we largely deny the juvenile officer's motion to supplement the legal file with materials outside the record in the child's case. We grant the motion only with regard to those documents that were admitted into evidence at the child's January 15, 2010 hearing, specifically, the guardian ad litem's exhibit 1 and the juvenile officer's exhibits 1 and 2.
We now turn to the ultimate question in this appeal: whether sufficient evidence supported the family court's finding that Mother neglected her child, thus warranting the court's taking jurisdiction over the child and removing him from *470 Mother's custody. Removal of a child from a parent's custody implicates the fundamental right of parents to rear their children free from government interference. In re C.A.D., 995 S.W.2d 21, 27 (Mo.App. W.D.1999). A parent's right to rear her child is a fundamental liberty interest protected by the Constitution's guarantee of due process. In re K.A.W., 133 S.W.3d 1, 12 (Mo. banc 2004). A parent's liberty interest in the care, custody, and control of her child is perhaps the oldest of the fundamental liberty interests recognized by the U.S. Supreme Court. Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)(plurality opinion). This interest does not evaporate simply because a parent has not been a model parent, or even because she has lost temporary custody of her child to the State. S.M.H., 160 S.W.3d at 372 (quoting Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).
We review the court's judgment wherein it found "a pattern of neglectful behavior," took jurisdiction over the child, and awarded custody of the child to the Children's Division. Our standard of review for decisions in juvenile proceedings is the same as for any court-tried civil case. C.A.D., 995 S.W.2d at 29. We shall affirm the trial court's judgment unless there is no substantial evidence to support it, the decision is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). In reviewing the sufficiency of the evidence, we consider the facts and all reasonable inferences in the light most favorable to the family court's order. C.A.D., 995 S.W.2d at 29.
The juvenile officer's petition, filed the day after the court ordered the child into protective custody, charged that Mother failed to provide necessary care and custody for the child because, from July 19, 2008 through September 20, 2009, Mother "established a continuous pattern of neglectful behavior toward the [child] on numerous occasions, placing the [child] at risk of harm." The juvenile officer amended the petition to add that Mother's pattern of neglectful behavior included the following: (a) Mother left her court-ordered placement with the child, without permission, from approximately October 9 through October 12, 2009, and their whereabouts were unknown to the Children's Division; (b) Mother failed to properly supervise the child on several occasions; and (c) Mother left her court-ordered placement with the child, without permission, from approximately July 18 through July 20, 2008, and their whereabouts were unknown to the Children's Division.
The trial court found by "clear, cogent and convincing evidence" that the amended allegations of the petition were true, except for those alleging Mother's failure to supervise the child. The court expressly found no evidence related to the allegations regarding failure to supervise. The family court took jurisdiction over the child, and placed him in the custody of the Children's Division for suitable foster-care placement.
Section 211.031.1 RSMo. (Supp. 2009) provides that:
[T]he juvenile court or the family court... shall have exclusive original jurisdiction in proceedings:
(1) Involving any child ... who is alleged to be in need of care and treatment because:
(a) The parents ... neglect or refuse to provide proper support, education which is required by law, medical, surgical or other care necessary for his or her well-being; ...

*471 (b) The child ... is otherwise without proper care, custody or support;...
To assert jurisdiction under section 211.031.1(1), the juvenile or family court must find clear and convincing evidence that the child needs care because the parent has neglected to provide the care necessary for the child's well-being. In re G.C., 50 S.W.3d 408, 410 (Mo.App. E.D. 2001). "[E]vidence is clear and convincing when it `instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true.'" Id. at 419 (Teitelman, J., concurring)(quoting In re T.S., 925 S.W.2d 486, 488 (Mo.App. E.D.1996)). Furthermore, "substantial evidence," as used in Murphy v. Carron, means clear, cogent, and convincing evidence when that standard of proof applies. Id. (Teitelman, J., concurring)(quoting In re O'Brien, 600 S.W.2d 695, 698 (Mo.App. W.D.1980)).
Section 210.110(12) RSMo. (Supp.2009) defines "neglect" as the "failure to provide, by those responsible for the care, custody, and control of the child, the proper or necessary support, education as required by law, nutrition or medical, surgical, or any other care necessary for the child's well-being[.]" Thus, the juvenile officer had the burden to prove by clear and convincing evidence that Mother failed to provide care necessary for her child's well-being. The juvenile officer failed to meet this burden.
Five witnesses testified at the adjudication and disposition hearing: Mother's therapist; a house parent with Mother's residential placement; the house supervisor with Mother's residential placement; Mother's case manager; and a deputy juvenile officer. The first three witnesses testified that they had not observed any interactions between Mother and the child that gave them reasonable cause to suspect child abuse or neglect. Multiple witnesses testified that Mother loved the child, and that Mother and the child had bonded, had a good relationship, and were close.
The therapist in Mother's case testified that she saw Mother from December 2008 to October 2009. The therapist's primary role was to work with Mother and her mother, the child's maternal grandmother, on the issues that brought Mother into foster care. The therapist testified that "[t]here were issues [with Mother's parenting] but not in my personal opinion of being a mandated reporter that would require a hotline" report prior to the October 2009 hearing, when the court removed the child from Mother's custody. Initially, the therapist testified that Mother said she left her placement in the middle of the night to be with a hospitalized friend, and that she was not with the maternal grandmother. Later, however, the therapist testified that Mother was vague about where she had been and with whom. The therapist was unable to ascertain anything further about the whereabouts of Mother and the child, except "when she was with her mother, which I can verify."
A house parent with Almost Home Teen Shelterthe home where Mother and her child livedthen testified. The house parent stated that she read that Mother had left with the child at midnight, and was gone the entire weekend, but the house parent did not observe this personally. She testified that she had no concerns about the child having suffered injury or about his well-being when Mother returned from her unauthorized absence with the child. The house parent stated that Mother told her that Mother and the child visited Mother's "guy friends" and the maternal grandmother.
*472 The house supervisor with Almost Home testified briefly about Mother's use of inappropriate language and failure to supervise the child in accordance with Almost Home rules.
Mother's foster-care case manager with Good Shepherd, an agency that contracts with the Children's Division for foster-care services, also testified. She had been Mother's case manager since July 2008. The case manager explained that the "main issue" concerning Mother's parenting while she lived at Almost Home "was when she left her court[-]ordered placement on October 12th for two days with [the child]." The case manager stated she was informed that Mother had "left at midnight with a car full of men. She did not sign out and nobody knew where she was." According to the case manager, when questioned about her whereabouts, Mother replied that the child was with her and was fine, and that she had stayed with friends during her absence from Almost Home. She stated that Mother refused to provide more details.
The case manager went on to explain that she was upset with Mother for failing to comply with the court order in her own case. On cross-examination, the case manager confirmed that it was hoped that the child's removal would motivate Mother to do what she needed to do.
Q. That is [the child] being removed from [Mother's] custody, the hope was that she would start doing what she needed to do?
A. Correct.
And later on redirect:
Q. What was the precipitating event that caused [the child] to be removed from [Mother's] custody?
A. Just her not making progress with her own case. And it was ordered that [the child] come into protective custody.
* * *
Q. And up to that time, you had not taken any steps to remove [the child] from [Mother's] custody?
A. Correct.
The juvenile officer proffered a report prepared by the case manager, and the family court admitted it into evidence. The report states that "[Mother] has not completed any of her services in her own case including GED, employment, therapy, and following the rules of her placement. She has displayed this pattern of behavior the past few months that led to the trial court ordering Protective Custody over [the child] at [Mother's] court hearing on 10-20-09."
Finally, a deputy juvenile officer testified. She stated Mother had told her that, while Mother was away from her placement in July 2008, Mother left the child for one night in the care of a female friend who has children. The deputy juvenile officer confirmed that neither the Children's Division nor the juvenile officer would have "approved" the place where Mother left the child in July 2008. On cross-examination, she confirmed that at the time Mother left her placement in July 2008, the child was neither in care nor under any court order, and that the rules applied to Mother.
After hearing the evidence, the court expressly found that the allegations concerning Mother's failure to supervise the child were not proved. The court found that the other two allegations were true in that Mother left her placement with the child without permission in July 2008 and October 2009. The court then stated:
But the bottom line is, the evidence that I've heard really boils down to whether or not paragraph A [the October 2009 *473 absence] and paragraph C [the July 2008 absence] alone are enough to establish a pattern of neglectful behavior. I believe that even though we're not talking about the fact that [the child] was ordered to be in Almost Home, and that there was a court order that directed [M]other in that regard to do anything as it relates to her child, the fact that on two different occasions that [Mother] left both of these placements, at least according to the evidence that I've heard up to this point, that because of the fact that [Mother] left these placements without telling anybody where she was, without letting anybody know where this child was, is a pattern of neglectful behavior that I believe has been established.

Emphases added.
We are mindful of our standard of review to consider the evidence and all reasonable inferences in the light most favorable to the judgment, and to give due regard to the opportunity of the family court to judge the witnesses' credibility. The family court, however, made clear that it relied only on Mother's two unauthorized absences from her own foster-care placement, wherein she took her child with her, to find that Mother neglected her child. This is not evidence of neglect. Furthermore, the court expressly found that the allegations that Mother failed to supervise her child were not proved. The statute requires a deprivation of care necessary for the child's well-being. Section 210.110(12) RSMo. (Supp.2009). We have considered all of the incidents and circumstances to which the witnesses testified and the exhibits admitted into evidence. We can find no deprivation of care. Because we find no evidence of neglect, we need not consider whether evidence of two incidents occurring fifteen months apart could constitute clear and convincing evidence of a pattern of neglect.[3]
We reverse the family court's judgment and remand the cause, ordering that J.M. be returned to Mother's custody.
SHERRI B. SULLIVAN, P.J., and CLIFFORD H. AHRENS, J., concur.
NOTES
[1] The juvenile officer also seeks to supplement the legal file with duplicates of these same documents from Mother's case that were attached to reports prepared by the juvenile officer and filed with the court in the child's case, but these documents were not admitted into evidence in the child's case.
[2] All statutory references are to RSMo. (2000) except as otherwise indicated.
[3] Likewise, we need not consider the lawfulness of the court's original taking of the child into protective custody and the asserted violations of Mother's rights to due process of law. Given our resolution of the appeal, these issues are moot.