STATE of Missouri, Respondent,

v.

Mark WOODEN, Appellant.

No. SC 92846.

Supreme Court of Missouri,
En Banc.

Jan. 8, 2013.

Amanda P. Faerber, Public Defender's Office, St. Louis, for Wooden.

Jerome McDonald, Circuit Attorney's Office, St. Louis, for the State.

PER CURIAM.

A jury found Mark Wooden guilty of two counts of harassment, one under § 565.090.1(2)[1] and one under § 565.090.1(5), and one count of possession of marijuana. Wooden's harassment convictions stem from emails he sent to various St. Louis area public officials. On appeal, Wooden argues that his harassment conviction under § 565.090.1(2) is unconstitutional because it punishes him for exercising his right to free speech guaranteed under the First Amendment and Mo. Const. art. I, sec. 8. In the alternative, Wooden argues that there is insufficient evidence to support his conviction under that provision. Wooden argues that his harassment conviction under § 565.090.1(5) constitutes plain error because this Court overturned that provision in *State v. Vaughn*, 366 S.W.3d 513 (Mo. banc 2012).

Wooden's emails contained personally offensive language and references to sawed-off shotguns, assassinations, and domestic terrorism and did not constitute protected speech. This Court concludes that § 565.090.1(2) is constitutional as applied to Wooden and that there was sufficient evidence to support his conviction. Because *State v. Vaughn* invalidated § 565.090.1(5) and the State concedes that manifest injustice will result if the conviction under that statute is not reversed, the judgment as to count II, as conceded, is

set aside. The remainder of the judgment is affirmed.

## Factual and Procedural History

Between February 19, 2011, and February 24, 2011, Mark Wooden, a resident of the city of St. Louis, sent a number of emails to various St. Louis area public officials. The emails contained text, audio attachments, or both. An alderwoman for the Sixth Ward of St. Louis was one of the recipients of these emails. Wooden did not send any email to the alderwoman exclusively, and each email included as many as 40 recipients. The alderwoman received the emails at an address displayed on her official website.

On February 19, 2011, the alderwoman received an email from Wooden with a 19 minute long audio attachment. The attachment specifically referenced the alderwoman and compared her to the biblical character Jezebel who, Wooden stated, abused her weaker subjects. Wooden asserted that, like Jezebel, the alderwoman spent too much time caring for the powerful and rich in her community and did not visit or care for the poorer neighborhoods in the Sixth Ward. Wooden repeatedly used the word "bitch" and referred to the alderwoman as a "bitch in the Sixth Ward." In the audio attachment, Wooden made reference to dusting off a sawed-off shotgun and indicated that, at one point in life, he had personally sawed off the barrel of a shotgun and sanded down the edges. Wooden stated he was going to make "a mess of everything with his sawed-off." Additionally, Wooden referred to himself as a domestic terrorist and referred to the John F. Kennedy assassination, the murder of a federal judge, and the shooting of a congresswoman, presumably the shooting of Congresswoman Gabrielle Giffords and murder of United States District Court Judge John Roll. Wooden's tone

---

1. All statutory references are to RSMo Supp. 2011, unless otherwise noted.

throughout a majority of the recording was menacing and, at times, maniacal.

The alderwoman received four emails between February 19 and February 21. On February 21, after receiving the fourth email, she emailed Wooden and asked him to stop emailing her. Between February 21 and February 24, Wooden sent three additional emails. At some point, the alderwoman contacted the police because she felt threatened by the emails. She also sought a restraining order because, as she testified at trial, she feared for her safety due to the threatening nature of the emails and the references to the sawed-off shotgun.

Wooden was arrested February 24, 2011. The State charged Wooden with one count of harassment under § 565.090.1(2) (count I), one count of harassment under § 565.090.1(5) (count II), and one count of possession of marijuana (count III). Wooden moved for dismissal of the harassment charges arguing that they violated his constitutional rights to freedom of speech and to petition the government for redress of grievances. The circuit court overruled the motion. The case proceeded to a jury trial, and Wooden was found guilty of all three charges. Wooden was sentenced to one day in jail for each count, to be served concurrently. This case involves the validity of a state statute; therefore, this Court has jurisdiction. Mo. Const. art. V, sec. 3.

**Constitutionality of § 565.090.1(2)**

*Standard of Review*

■ This Court reviews the circuit court's determination of the constitutional validity of a state statute *de novo. Vaughn,* 366 S.W.3d at 517. "Statutes are presumed constitutional and will be found unconstitutional only if they clearly contravene a constitutional provision." *Id.*

*Analysis*

■ Wooden asserts that § 565.090.1(2) is unconstitutional as applied to him because his speech was protected under the First Amendment to the United States Constitution and Mo. Const. art. I, sec. 8.[2] Section 565.090.1(2) states:

1. A person commits the crime of harassment if he or she:

\*        \*        \*

(2) When communicating with another person, knowingly uses coarse language offensive to one of average sensibility and thereby puts such person in reasonable apprehension of offensive physical contact or harm[.]

Wooden asserts that his communications were meant as a commentary about the performance of his elected governmental representative and, therefore, constituted protected political speech.

■ "[T]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). The ability to criticize the government and public officials are undeniably privileges that are afforded to all citizens

---

**2.** Mo. Const. art. I, sec. 8 provides:
That no law shall be passed impairing the freedom of speech, no matter by what means communicated: that every person shall be free to say, write or publish, or otherwise communicate whatever he will on any subject, being responsible for all abuses of that liberty; and that in all suits and prosecutions for libel or slander the truth thereof may be given in evidence; and in suits and prosecutions for libel the jury, under the direction of the court, shall determine the law and the facts.

under the First Amendment and Missouri's correlative provision, article I, section 8. *See Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *N.Y. Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Significantly, "[t]he constitutional guarantees of freedom of speech forbid the States to punish the use of words or language not within narrowly limited classes of speech." *Vaughn,* 366 S.W.3d at 518 (quoting *Hess v. Indiana,* 414 U.S. 105, 107, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973)).

■■■■■ But the right to free speech "is not absolute at all times and under all circumstances." *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Id.* at 571–72, 62 S.Ct. 766. Unprotected speech includes "the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* at 572, 62 S.Ct. 766. "It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Id.;* see also *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105, 124, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991) (Kennedy, J., concurring) (indicating that the constitution does not protect obscenity, defamation, words tantamount to an act otherwise criminal, words that impair some other constitutional right, speech that incites lawless action, and speech calculated or likely to bring about imminent harm the State has the substan-

tive power to prevent). "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." *Cantwell v. Connecticut,* 310 U.S. 296, 309–10, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

While Wooden's communications with the alderwoman involved criticism of her work as alderwoman, Wooden has not carried his burden of demonstrating that § 565.090.1(2), as applied to him, clearly contravenes a constitutional provision. In addition to the criticism of the alderwoman and other St. Louis area public officials, Wooden discussed using a sawed-off shotgun, domestic terrorism, and the assassination or murder of politicians. He did so while likening the alderwoman to the biblical character, Jezebel, who was eaten by dogs as punishment for her abuse of power, and referring to the alderwoman as a "bitch in the Sixth Ward." These communications are words that, taken together, "through their very utterance inflict injury or tend to incite an immediate breach of the peace" and are not protected by the First Amendment or the Missouri Constitution. *Chaplinsky,* 315 U.S. at 571–72, 62 S.Ct. 766.

Wooden urges this Court to follow the United States Supreme Court case of *Cohen v. California.* Cohen was convicted of disturbing the peace for wearing a jacket bearing the words "F— the Draft." 403 U.S. at 16, 91 S.Ct. 1780. Cohen was convicted under a statute that prohibited "maliciously and willfully disturb(ing) the peace or quiet of any neighborhood or person ... by ... offensive conduct...." *Id.* The Supreme Court found the conviction was unconstitutional because it clearly rested on the offensiveness of the word used. *Id.* at 18, 91 S.Ct. 1780. Wooden argues that his conviction, similar to *Co-*

*hen,* rests solely on the offensiveness of the word "bitch" used in his communications.

◼ *Cohen* is distinguishable from Wooden's case. Wooden's argument that his conviction rests solely on the offensiveness of the language he used completely ignores his references to dusting off his shotgun, domestic terrorism, and the assassination of a number of politicians. Unlike in *Cohen,* where the statute criminalized only "offensive conduct," here § 565.090.1(2) required the jury to find Wooden used "coarse language offensive to one of average sensibilities" *and* that such communication "put[ ] [the alderwoman] in reasonable apprehension of offensive physical contact or harm." Speech that causes a fear of physical harm is not speech protected by either the United States or Missouri constitutions. Rather, it falls into the category of words "[that] by their very utterance inflict injury or tend to incite an immediate breach of the peace" and do not receive constitutional protection. *Chaplinsky,* 315 U.S. at 572, 62 S.Ct. 766. The constitutions do not afford the luxury of allowing an individual to send threatening communications to politicians, pepper them with political speech, and then hide behind the individual rights he or she has maliciously abused. While portions of Wooden's messages constituted actual criticism of the alderwoman, there is nothing unconstitutional about punishing Wooden for those unprotected portions that placed the alderwoman in "reasonable apprehension of offensive physical contact or harm." Because § 565.090.1(2) punished Wooden for his unprotected communications, it is not unconstitutional as applied.

### Sufficiency of the Evidence for the Conviction under § 565.090.1(2)

#### Standard of Review

◼ When judging the sufficiency of the evidence to support a conviction, appellate courts do not weigh the evidence but accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences. *State v. Latall,* 271 S.W.3d 561, 566 (Mo. banc 2008). "In determining whether the evidence was sufficient to support a conviction, this Court asks only whether there was sufficient evidence from which the trier of fact reasonably could have found the defendant guilty." *Id.*

#### Analysis

◼ Section § 565.090.1(2) has three elements: 1) the defendant makes a communication with another person, 2) during that communication the defendant uses "coarse language offensive to one of average sensibility," and 3) "thereby puts such person in reasonable apprehension of offensive physical contact or harm." Wooden admits that he made a communication, but he asserts that there was insufficient evidence for a juror to reasonably find the final two elements of the crime.

Wooden argues that there was insufficient evidence to support a finding that he used coarse language offensive to one of average sensibility in his communications. This Court in *State v. Koetting,* 691 S.W.2d 328, 331 (Mo.App. E.D.1985), held that "[c]oarse language directed specifically to an average person is likely to be offensive." Wooden claims that he never directed any coarse language at the alderwoman. This contention is undercut by the audio attachment in which Wooden called the alderwoman the "bitch in the Sixth Ward," made reference to making a mess of everything with his sawed-off shotgun, and discussed John F. Kennedy getting his "cherry popped." Moreover, Wooden directed these remarks at the alderwoman merely by sending her the email

containing the attachment. Taken together, there was sufficient evidence from which a juror could reasonably find that Wooden used "coarse language offensive to one of average sensibility."

 Wooden also argues that there was insufficient evidence to find that the alderwoman's fear of harm or physical contact was reasonable. Wooden argues that the fear was unwarranted because he did not make any specific threats of harm and his statements were "metaphoric." As has been noted repeatedly, Wooden singled out the alderwoman in his audio attachment, he discussed the assassination of politicians, referred to himself as a domestic terrorist, and stated he would make a mess of things with his shotgun. Wooden's claims that the statements were metaphoric is irrelevant. There was no way for the alderwoman, or a reasonable juror, to know Wooden's subjective intent simply by listening to the audio attachments or reading the email. The lack of specific threats is also unpersuasive. Section 565.090.1(2) does not require specific threats against a person, only a reasonable apprehension of harm. Nothing in this Court's precedent or the plain meaning of the statute indicates that the only way a person can be put in reasonable apprehension of harm is through specific threats. Reviewing all the evidence on the record, there was sufficient evidence from which a juror could reasonably find that the alderwoman was placed in reasonable apprehension of offensive physical contact or harm by the coarse language used by Wooden.

### Conviction Under § 565.090.1(5)

Wooden also challenges his conviction under count II for violation of § 565.090.1(5). Wooden argues that he has suffered a manifest injustice because this Court in *State v. Vaughn* ruled that § 565.090.1(5) was unconstitutionally overbroad. The State concedes that allowing Wooden's conviction for count II to stand would constitute a manifest injustice. The judgment as to count II is reversed.

### Conclusion

For the foregoing reasons, the judgment as to count II is reversed. In all other respects, the judgment is affirmed.

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE, FISCHER, STITH and DRAPER, JJ., concur. WILSON, J., not participating.