MARY W. SHEFFIELD, J.
Joy Lee Gay ("Defendant") appeals her convictions for the class B misdemeanors of inhaling or smelling the fumes of a solvent and failure to place the right side of her vehicle as near the right-hand side of the highway as practicable. See §§ 578.250, 304.015.[1] In two points on appeal, Defendant claims that the trial court erred in failing to grant a judgment of acquittal at the close of the evidence because: (1) "there was no evidence that [Defendant] inhaled 'fumes' of a 'solvent' for the purpose of inducing symptoms of intoxication"; and (2) "there was no evidence that [Defendant] knowingly parked the car." For the reasons that follow, Defendant's conviction for inhaling or smelling the fumes of a solvent is reversed. The judgment is affirmed in all other respects.
Standard of Review
At a bench trial, the trial court's "findings shall have the force and effect of the verdict of a jury." Rule 27.01(b). Accordingly, when reviewing the sufficiency of the evidence in a bench-tried case, this Court employs the same standard of review as in a jury-tried case. State v. Rousselo , 386 S.W.3d 919, 920 (Mo. App. S.D. 2012). That is, "this Court's review is limited to determining whether sufficient evidence was admitted at trial from which a reasonable trier of fact could have found each element of the offense to have been established beyond a reasonable doubt." State v. Burrell , 160 S.W.3d 798, 801 (Mo. banc 2005). We "do not weigh the evidence but accept as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences." State v. Wooden , 388 S.W.3d 522, 527 (Mo. banc 2013). "This Court, however, may not supply missing evidence, or give the state the benefit of unreasonable, speculative or forced inferences." State v. Clark , 490 S.W.3d 704, 707 (Mo. banc 2016) (internal citations and brackets omitted). The following summary of the relevant *625 evidence is presented in accordance with that standard.
Factual and Procedural Background
On June 25, 2016, Highway Patrolman Steven Cunningham ("Sergeant Cunningham") responded to a reported motor vehicle crash in Phelps County. Defendant was in the driver's seat of a car stopped on the Michael Newton Bridge in the right eastbound lane of Interstate 44. Defendant's car was "in the middle of the driving lane," two feet to the left of a three to four-foot-wide shoulder. The car had some dents and dirt on it and the "front clip" was hanging down. Eastbound traffic was at a near standstill due to Defendant's car being stopped on the bridge.
Sergeant Cunningham approached Defendant in the stopped car, observing that she "had a can of air up to her face and was inhaling ... from it." Sergeant Cunningham took the can from Defendant, threw it on the back seat, removed Defendant from the car, and handcuffed her. A "wrecker driver" was called and responded to the scene. The wrecker driver drove Defendant's car off the bridge onto the right shoulder just past the bridge, and "hooked [it] up ... to tow it." Sergeant Cunningham seized the "can of air" and gave it to Corporal Jeremy McCurdy ("Corporal McCurdy"), also with the highway patrol. Corporal McCurdy took custody of Defendant and the "can of air."
Defendant waived a jury and received a bench trial. Seven photographs of the "can of air" were admitted into evidence. The actual can was destroyed before trial because of highway patrol policy requiring destruction of hazardous materials. Those photographs showed a metal aerosol-style can of "iHome compressed air duster." Under a heading marked "FIRST AID" on the can was listed "1. Inhalation: Immediately move to fresh air." Two photographs show a caution label on the can that reads, in part: "THE INTENTIONAL MISUSE OF DELIBERATELY INHALING CONTENTS MAY BE FATAL. Use in well-ventilated area.... Contains Difluoroethane (75-37-6)." Another shows the warning: "MISUSE BY DELIBERATELY CONCENTRATING AND INHALING CONTENTS MAY BE HARMFUL OR FATAL."
The two highway patrol officers were the only witnesses to testify. After the close of evidence and arguments, the trial court prefaced its verdict by observing, "Solvent is a chemical substance." The trial court went on to say, "I ... don't check my brain when I come into the courtroom. And I know that chlorofluorocarbons are solvents."[2] The findings of guilt Defendant now challenges were then pronounced, and Defendant was sentenced to two concurrent terms of 10 days in jail. This appeal followed.
Discussion
Point 1
Defendant's first point challenges the sufficiency of the evidence supporting her conviction for inhaling the fumes of a solvent. Defendant argues that "no evidence produced by the state" showed that the can contained a "solvent" or any substance "that was capable of dissolving another substance, which is a 'solvent.' " We agree.
Defendant was convicted under § 578.250. That section provides:
No person shall intentionally smell or inhale the fumes of any solvent , particularly toluol, amyl nitrite, butyl nitrite, *626 cyclohexyl nitrite, ethyl nitrite, pentyl nitrite, and propyl nitrite and their iso-analogues or induce any other person to do so, for the purpose of causing a condition of, or inducing symptoms of, intoxication, elation, euphoria, dizziness, excitement, irrational behavior, exhilaration, paralysis, stupefaction, or dulling of senses or nervous system, or for the purpose of, in any manner, changing, distorting, or disturbing the audio, visual, or mental processes; except that this section shall not apply to the inhalation of any anesthesia for medical or dental purposes.
Section 578.250 (emphasis added).[3]
"Solvent" is not defined in chapter 578. "In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary." State v. Oliver , 293 S.W.3d 437, 446 (Mo. banc 2009). The term "solvent" has been defined as "a usu. liquid substance capable of dissolving or dispersing one or more other substances[.]" Merriam-Webster's Collegiate Dictionary 1188 (11th ed. 2014). "Solvent" has also been defined as "a substance that dissolves another to form a solution: Water is a solvent for sugar ." The Random House Dictionary of the English Language 1818 (Unabr. 2d ed. 1987).
"The state has the burden to prove each and every element of a criminal case." State v. Taylor , 126 S.W.3d 2, 4 (Mo. App. E.D. 2003). Here, the State was required to show that the fumes Defendant inhaled emanated from "any solvent." § 578.250. The State posits that, although difluoroethane (75-37-6) is not one of the chemicals specifically designated as a solvent under § 578.250, it is in fact a solvent. The State recognizes that it failed to produce any evidence at trial to support that conclusion, but it claims that the trial court made an inference based on its own "personal scientific knowledge" that "should be permitted." The State argues that, even without evidence from the State at trial, this particular trial judge could "reasonably infer" from his own apparent "specialized knowledge" that difluoroethane (75-37-6) is a solvent.
We reject the State's argument. Whether evidence was sufficient to support a criminal conviction does not depend on the particular judge assigned to hear a case or the particular jurors chosen from a panel of dozens. Instead, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original), quoted in State v. Zetina-Torres , 482 S.W.3d 801, 809 (Mo. banc 2016).
The State implies that the trial judge's individual knowledge should allow the trial judge to take judicial notice of a necessary element of the offense without supporting evidence. In Missouri, judicial notice may be taken of (1) "a fact which is common knowledge of people of ordinary intelligence" or (2) "a fact, not commonly known, but which can be reliably determined by resort to a readily available, accurate and credible source." State v. Weber , 814 S.W.2d 298, 303 (Mo. App. E.D. 1991).
Nothing supports a finding that it is common knowledge among people of ordinary intelligence that difluoroethane (75-37-6) is a solvent nor that this information can be reliably determined by resort to a readily available, accurate and credible *627 source. This is evidenced by the State now offering us highly technical chemistry treatises not readily available, which list difluoroethane (75-37-6) as an organic solvent. Neither of the two treatises that the State cites on appeal were introduced in evidence at trial, and they are "apparently sent here in an attempt to supply deficiencies in the evidence." Cupples Hesse Corp. v. State Tax Comm'n , 329 S.W.2d 696, 700 (Mo. 1959). We cannot consider evidence that was not presented to the trial court. See In re Adoption of C.M.B.R. , 332 S.W.3d 793, 823 & n.24 (Mo. banc 2011) (abrogated in part on unrelated grounds by S.S.S. v. C.V.S. , 529 S.W.3d 811 (Mo. banc 2017) ); In re J.M. , 328 S.W.3d 466, 469 (Mo. App. E.D. 2010) ; see also Jackson , 443 U.S. at 318, 99 S.Ct. 2781 ("the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be ... to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.") (emphasis added).
It may be accepted within the scientific community, and verifiable by resort to specialized and technical reference works, that difluoroethane (75-37-6) is a solvent (although we make no such determination). Yet many scientifically accepted facts remain beyond the common knowledge of people of ordinary intelligence. Customarily, such information is presented to a fact-finder through qualified witnesses, subject to cross-examination. Alternatively, the General Assembly may determine, as a matter of law, that a particular chemical is a solvent under § 578.250, just as it has already done with seven such chemicals.[4]
The burden to produce evidence that difluoroethane (75-37-6) is a solvent rested with the State. The State failed to offer such proof, so Defendant's conviction for inhaling the fumes of a solvent must be reversed.[5] Point 1 is granted.
Point 2
Defendant's second point challenges the sufficiency of the evidence to support her conviction for the class B misdemeanor of failure to place the right side of her vehicle as near the right-hand side of the highway as practicable. Defendant argues the State presented no evidence that she "knowingly parked the car."
As pertinent here, § 304.015.1 provides that "[a]ll vehicles not in motion shall be placed with their right side as near the right-hand side of the highway as practicable[.]" § 304.015.1. Violation of this section is a "class C misdemeanor unless such violation causes an immediate threat of an accident, in which case such violation shall *628 be deemed a class B misdemeanor." § 304.015.9.
Defendant admits that § 304.015.1 does not expressly require proof of a culpable mental state, but she argues that Missouri statutes impute a requisite mental state of knowingly. Defendant argues that the State therefore needed to prove that she knowingly failed to place the right side of her car as near the right-hand side of the highway as practicable.[6] We need not determine whether Defendant is correct, because, regardless, the evidence was sufficient to establish she knowingly failed to place the right side of her car as near the right-hand side of the highway as practicable.
A person acts knowingly with respect to their conduct when they are "aware of the nature of his or her conduct or that those circumstances exist[.]" § 562.016.3(1). "Direct proof of the required mental state is seldom available, and such intent is usually inferred from circumstantial evidence." State v. Letica , 356 S.W.3d 157, 166 (Mo. banc 2011). "The defendant's mental state may be determined from evidence of the defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct." State v. Hineman , 14 S.W.3d 924, 927-28 (Mo. banc 1999).
Here, Defendant was behind the wheel of her car, which was stopped on Interstate 44. The car was located in the middle of the right lane with roughly six feet of free space to its right. Sergeant Cunningham testified that Defendant was acting rationally and was capable of understanding and answering his questions. Moreover, though there was evidence that the car had driven through a median, causing at least minor damage, the wrecker driver was able to drive the car out of the flow of traffic without incident. Defendant had remained in the car long enough to bring eastbound traffic to a standstill and long enough to allow the highway patrol to respond. During this time, rather than move her car out of the middle of the highway, Defendant instead chose to block traffic while she inhaled from a "can of air." The trial court could reasonably infer that Defendant was aware that she had failed to place the right side of her car as near as practicable to the right-hand side of the highway. We ignore any evidence and inferences contrary to the trial court's finding of guilt. Wooden , 388 S.W.3d at 527. Point 2 is denied.
Conclusion
The judgment is reversed with respect to Defendant's conviction for Count 4, inhaling the fumes of a solvent. The judgment is affirmed in all other respects.
JEFFREY W. BATES, J.-CONCURS
DANIEL E. SCOTT, J.-CONCURS

Unless otherwise noted, all statutory references are to RSMo (2016). Rule references are to Missouri Court Rules (2018).

The State notes in its brief that the only chemical listed on the can of air, difluoroethane (75-37-6), is not, in fact, a "chlorofluorocarbon."

Effective January 1, 2017, this section was transferred, unchanged, to § 579.097.

By way of analogy, Missouri criminalizes possession of 36 chemicals specifically designated as methamphetamine precursors when those chemicals are knowingly possessed with the intent to produce a controlled substance. § 579.110.1 (RSMo 2017 ) (referring to list of chemicals in § 195.400.2). The statute adds a catch-all provision, however, criminalizing possession of "any other chemicals proven to be precursor ingredients of methamphetamine or amphetamine, as established by expert testimony [.]" § 579.110.1 (emphasis added). Similarly, in State v. Bridges , 398 S.W.2d 1, 5-6 (Mo. banc 1966), our supreme court found that whether "amphetamine hydrochloride" was a derivative of amphetamine, or was merely a compound that contained amphetamine itself, was a fact question that the State was required to prove at trial so as to establish that the defendant had illegally transferred "amphetamine."

"The double jeopardy clause precludes remand for a second trial when a conviction is reversed because the evidence introduced at the first trial was legally insufficient." State v. Self , 155 S.W.3d 756, 764 (Mo. banc 2005). Defendant's first point also claims that the evidence was insufficient to establish that she had inhaled or smelled fumes . Our disposition renders moot any discussion of that argument.

"Missouri law generally requires a mental state as an element to any crime." Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon , 185 S.W.3d 685, 690 (Mo. banc 2006). Under § 562.021, "if the definition of any offense does not expressly prescribe a culpable mental state for any elements of the offense, a culpable mental state is nonetheless required and is established if a person acts purposely or knowingly; but reckless or criminally negligent acts do not establish such culpable mental state." § 562.021.3. Exceptions to the general rule that a mental state is required for any crime do exist, however. See, e.g. , § 562.026.