

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,

        Respondent,

v.

JOSHUA STEVEN COLLINS,

        Appellant.

)
)
)
)
)
)
)
)
)
)
)

*Opinion issued May 17, 2022, and modified on the Court's own motion August 30, 2022*

No. SC99211

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY
The Honorable Thomas E. Mountjoy, Judge

Joshua Steven Collins (hereinafter, "Collins") appeals the circuit court's judgment after a jury found him guilty of tampering with a judicial officer and second-degree harassment of his probation officer, A.G. Collins asserts a facial overbreadth challenge to the second-degree harassment statute, section 565.091[1] and challenges the sufficiency of the evidence to support his second-degree harassment conviction. Collins also argues the circuit court violated his right to be free from double jeopardy when it sentenced him to both tampering with a judicial officer and second-degree harassment because he believes second-degree harassment is a lesser-included offense of tampering with a judicial officer.

---

[1] All statutory references are to RSMo 2016 unless otherwise indicated.

This Court holds section 565.091 is not overbroad, there was sufficient evidence to support Collins' conviction for second-degree harassment, and sentencing him for both tampering with a judicial officer and second-degree harassment did not violate his right to be free from double jeopardy. The circuit court's judgment is affirmed.[2]

**Factual and Procedural Background**

In January 2019, probation and parole officer A.G. began supervising Collins for his felony fourth-degree assault conviction.[3] Part of A.G.'s duties required her to monitor Collins' romantic status and dating activity. Collins also was required to use an alcohol monitor that alerted A.G. if he consumed alcohol.

In May 2019, A.G. was alerted Collins consumed alcohol, and she contacted him by telephone. A.G. described Collins as "very angry" during their conversation. Collins mentioned A.G.'s Facebook account and stated he left her a voicemail message at her office. A.G. directed Collins to stay home until the monitor indicated he had no alcohol in his system or she spoke to him again. After hanging up, A.G. checked her Facebook account and discovered Collins sent her a friend request and several direct messages. These messages stated:

> Hey[.] I hired a P.I. Omg you should see what I found[.] Decided too [sic] check you out like you check me out[.] You should call me cause your sons this [sic]

---

[2] The Missouri Court of Appeals, Southern District, ordered this case transferred to this Court prior to opinion pursuant to article V, section 11 of the Missouri Constitution because this case presents a challenge to the constitutional validity of a statute over which this Court has exclusive jurisdiction. Mo. Const. art. V, sec. 3.

[3] Section 565.076.2 enhances the penalty for fourth-degree domestic assault from a class A misdemeanor to a class E felony after a defendant is convicted of two or more offenses. Collins was on probation for a third or subsequent offense when A.G. began supervising him.

selling meth[.]  I got pics[.]  She's doing blow jobs too[.]  Lol[.]  I have so much to give Jones[.][4]

A.G. has three adult children:  two sons and a daughter.  A.G. never discussed her children with Collins.  The Facebook messages repeated what Collins told her when they spoke on the telephone.  A.G. immediately contacted her children to inform them about Collins' messages, to see if he sent them Facebook friend requests, and to advise them to make their Facebook accounts as secure as possible.  A.G. contacted her supervisor and sent him copies of Collins' messages.  Upon her supervisor's advice, A.G. contacted the police.

A.G. went to her office the next morning and listened to Collins' voicemail message, which repeated the information he conveyed during their telephone conversation and in the Facebook messages.  Collins reiterated his accusation her son was involved with drugs and stated her other son was a "date raper [sic]."  Collins told A.G. he had a "P.I.," stated, "you follow me, I follow you," and called her a bitch.  After receiving the Facebook and voicemail messages, A.G. was "scared, nervous, anxious, worried, and concerned," particularly for her children because she was supervising Collins for a violent offense and was uncertain about his intentions.  A.G. had supervised approximately 250 to 300 offenders previously, and none of them attempted to contact her through Facebook or make threats or accusations involving her family.

---

[4] "Jones" referred to the Honorable David Jones, the judge who placed Collins on supervised probation.

Collins was charged with tampering with a judicial officer and first-degree harassment. He filed motions to dismiss the charges, asserting overbreadth challenges to the constitutional validity of both statutes and alleging his right to be free from double jeopardy was violated. The circuit court overruled both motions. A jury found Collins guilty of tampering with a judicial officer and second-degree harassment, which was submitted to the jury as a lesser-included offense of first-degree harassment. Collins renewed his constitutional arguments in his motion for new trial, which the circuit court overruled. Collins appeals.

**Facial Challenge to the Constitutional Validity of Section 565.091**

In his first point on appeal, Collins argues the circuit court erred in overruling his motion to dismiss the second-degree harassment charge on constitutional grounds. Collins contends section 565.091 is unconstitutionally overbroad in violation of the First and Fourteenth amendments to the United States Constitution and article I, sections 8 and 10 of the Missouri Constitution because it infringes on constitutionally protected acts.

"This Court reviews the constitutional validity of a statute *de novo*." *Donaldson v. Mo. State Bd. of Registration for the Healing Arts*, 615 S.W.3d 57, 62 (Mo. banc 2020). "This Court will presume the statute is valid and will not declare a statute unconstitutional unless it clearly contravenes some constitutional provision." *Alpert v. State*, 543 S.W.3d 589, 595 (Mo. banc 2018). This Court will not invalidate a statute unless Collins meets his burden of proving the statute "clearly and undoubtedly violates some constitutional provision." *State v. S.F.*, 483 S.W.3d 385, 387 (Mo. banc 2016).

4

"Generally[,] 'a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.'" *State v. Vaughn*, 366 S.W.3d 513, 518 (Mo. banc 2012) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S. Ct. 2908, 37 L.Ed.2d 830 (1973)). Missouri courts permit an exception to this rule for First Amendment challenges in which litigants "are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Id*. (quoting *Broadrick*, 413 U.S. at 612).

Collins contends section 565.091 is overbroad. "The overbreadth doctrine restricts statutes that prohibit not only unprotected behavior, but also constitutionally protected behavior." *State v. Roberts*, 779 S.W.2d 576, 579 (Mo. banc 1989). "The overbreadth doctrine may apply when criminal statutes 'make unlawful a substantial amount of constitutionally protected conduct ... even if they also have legitimate application.'" *State v. Pribble*, 285 S.W.3d 310, 316 (Mo. banc 2009) (alteration in original) (quoting *State v. Moore*, 90 S.W.3d 64, 66 (Mo. banc 2002) (citation omitted)). "[T]he overbreadth doctrine is strong medicine and must be employed with hesitation, and then only as a last resort." *State v. Helgoth*, 691 S.W.2d 281, 285 (Mo. banc 1985) (internal quotations omitted) (quoting *New York v. Ferber*, 458 U.S. 747, 769, 102 S. Ct. 3348, 73 L.Ed.2d 1113 (1982)).

"The first step in the overbreadth analysis is to construe the challenged statute." *Vaughn*, 366 S.W.3d at 518. "[C]ourts may use a narrowing construction when 'the parties challenging the statute are those who desire to engage in protected speech that the overbroad statute purports to punish.'" *Planned Parenthood of Kan. v. Nixon*, 220 S.W.3d 732, 741 (Mo. banc 2007) (quoting *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504, 105 S. Ct. 2794, 86 L.Ed.2d 394 (1985)). "A narrowing construction is the preferred remedy in First Amendment cases" in that "a statute is construed so as to be in harmony with the constitution and upheld." *Id*.

Collins was convicted of second-degree harassment pursuant to section 565.091.1, which states, "A person commits the offense of harassment in the second degree if he or she, without good cause, engages in any act with the purpose to cause emotional distress to another person." "Emotional distress" is defined as "something markedly greater than the level of uneasiness, nervousness, unhappiness, or the like which are commonly experienced in day-to-day living." Section 565.002(7).

In *Vaughn*, this Court considered an overbreadth challenge to the prior harassment statute, section 565.090, RSMo Supp. 2008.[5] *Vaughn*, 366 S.W.3d at 519-22. This Court first examined subdivision (5) of section 565.090, which criminalized "[k]nowingly mak[ing] repeated unwanted communication to another person," and held that subdivision was overbroad because it criminalized protected communication. *Id*. at 520. This Court

---

[5] All statutory references to the harassment statute construed in *Vaughn* are to RSMo Supp. 2008.

6

upheld subdivision (6), however, after applying narrowing constructions. *Id*. at 522.

Section 565.090(6) provided a person committed harassment if he or she

> [w]ithout good cause engage[d] in any other act with the purpose to frighten, intimidate, or cause emotional distress to another person, cause such person to be frightened, intimidated or emotionally distressed, and such person's response to the act is one of a person of average sensibilities considering the age of such person.

*Id*. at 516 n.2 (quoting section 565.090(6)).

Both parties urge this Court to apply *Vaughn*'s narrowing constructions to section 565.091, but to different effect. Collins believes section 565.091 is unconstitutional when applying *Vaughn*'s first two narrowing constructions, while the third narrowing construction, "fighting words," does not apply here. The state contends *Vaughn*'s narrowing constructions support the statute's validity because section 565.091 contains substantially similar language to subdivision (6), including requiring the defendant to act "without good cause" and with "the purpose to cause emotional distress …."

*Vaughn* first determined "subdivision (6)'s ban of 'any other act' applie[d] only to conduct," while the other five subdivisions proscribed communications. *Id*. at 521. When applying this narrowing construction to section 565.091, Collins and the state contend section 565.091 proscribes both conduct and communication because, it does not contain multiple subdivisions nor does it contain the "any other act" language from subdivision (6). This Court agrees section 565.091 applies to both conduct and communication; however, this construction does not render section 565.091 overbroad so long as the statute applies to a limited core of unprotected conduct and communication. *Vaughn* recognized that, while subdivision (6)'s language applied only to conduct, "[t]his still [left] the

7

potential for expressive conduct" and continued its analysis. *Id.*; *see also Moore*, 90 S.W.3d at 67 (analyzing a sexual misconduct statute which "involve[d] both conduct, which the state can declare to be a crime, and speech" to determine if it was overbroad).

*Vaughn* next determined, "[b]ecause the legislature intentionally excluded the sort of acts for which there could be good cause, both the intended and the resulting effects must be substantial." *Id*. at 521. *Vaughn* defined "good cause" to mean "a cause or reason sufficient in the law: one that is based on equity or justice or that would motivate a reasonable [person] under all the circumstances." *Id*. (quoting *State v. Davis*, 469 S.W.2d 1, 5 (Mo. 1971)). This Court found "the exercise of constitutionally protected acts clearly constitutes 'good cause ….'" *Id*. Hence, the legislature's use of the "without good cause" language signals its intent to criminalize only conduct unprotected by the constitution.

Collins concedes implementing *Vaughn*'s "without good cause" narrowing construction "arguably helps save the statute," especially when considering section 565.091 no longer requires the victim actually to suffer emotional distress to prove the defendant committed second-degree harassment. Nevertheless, Collins contends the "without good cause" language, standing alone, does not save the statute because good cause is implied in every statute. This contention fails because section 565.091 specifically requires the defendant to act without good cause as an element of the offense, which "gives notice to potential actors as well as provides a sufficiently concrete standard, so as to mitigate the potential for arbitrary enforcement." *Id*. at 522. Collins further contends this Court would not have applied the other narrowing constructions in *Vaughn* if the "without good cause" language was sufficient, in and of itself, to save subdivision (6). Yet, *Vaughn*

8

did not state or hold all of its narrowing constructions were necessary to uphold subdivision (6).

Collins also argues the statute cannot be construed narrowly to apply to unprotected expression because it does not require the victim actually to suffer emotional distress like the predecessor statute. *Vaughn* determined, however, subdivision (6) did "not predicate culpability on the subjective reaction of the victim." *Id*.; *see also State v. Koetting*, 616 S.W.2d 822, 824 (Mo. banc 1981) (stating "the criminality of the conduct is measured in the [harassment] statute not by the unpredictable effect upon third persons, but by the mental state of the actor"). "Rather, subdivision (6) utilize[d] a reasonable person standard and, thus, place[d] the public on notice of the level at which conduct creates culpability." *Vaughn*, 366 S.W.3d at 522. Here, section 565.091 contains a scienter requirement that one acts *with the purpose* to cause emotional distress, not that the victim actually suffer emotional distress.

Finally, Collins alleges the third narrowing construction finding "fighting words" were contemplated does not apply because section 565.091 does not include conduct constituting "fright" or "intimidation" that would provoke a violent reaction. "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem" which include "the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72, 62 S. Ct. 766, 769, 86 L.Ed. 1031 (1942). This Court recognizes generally "such offensive language can be statutorily prohibited only if it is personally abusive, addressed

9

in a face-to-face manner to a specific individual and uttered under circumstances such that the words have a direct tendency to cause an immediate violent response by a reasonable recipient." *State v. Swoboda*, 658 S.W.2d 24, 26 (Mo. banc 1983). Yet, this Court rejected an overbreadth challenge even when the alleged fighting words were not addressed in a face-to-face manner nor caused an immediate violent response by the recipient. *See Koetting*, 616 S.W.2d at 826 (upholding a harassment statute against an overbreadth challenge even though its application was not limited to obscenities or fighting words when the defendant made harassing telephone calls to the victim); *see also State v. Wooden*, 388 S.W.3d 522, 527 (Mo. banc 2013) (rejecting an as applied challenge to a harassment statute in which the defendant sent e-mails containing personally offensive language and references to weapons, assassinations, and domestic terrorism). Moreover, *Vaughn* stated acts done "with the purpose to … cause emotional distress punishes actions which *by their very occurrence* inflict injury or tend to incite an immediate breach of the peace." *Vaughn*, 366 S.W.3d at 521 (emphasis added) (internal quotations omitted).

Because a defendant is required to act without good cause and with a purpose to cause emotional distress, section 565.091 as construed is limited to conduct wholly outside of the First Amendment's protection and is not overly broad. Collins' facial challenge to section 565.091 fails.

### Sufficiency of the Evidence

Collins' second and third points challenge the sufficiency of the evidence to convict him of second-degree harassment. "When judging the sufficiency of the evidence to support a conviction, appellate courts do not weigh the evidence but accept as true all

10

evidence tending to prove guilt together with all reasonable inferences that support the verdict and ignore all contrary evidence and inferences." *Wooden*, 388 S.W.3d at 527. "In determining whether the evidence was sufficient to support a conviction, this Court asks only whether there was sufficient evidence from which the trier of fact reasonably could have found the defendant guilty." *Id*. (quoting *State v Latall*, 271 S.W.3d 561, 566 (Mo. banc 2008)).

Collins does not contest he acted without good cause and with the purpose to cause A.G. emotional distress. Further, Collins does not contend his particular acts were constitutionally protected or that section 565.091 is unconstitutional as applied to him. Instead, Collins' second point presumes this Court would construe section 565.091 to apply only to conduct and characterize his Facebook and voicemail messages as communications, thus rendering them protected speech. Because this Court determined section 565.091 applies to both communication and conduct, this argument fails.

Likewise, Collins' third point is premised upon this Court construing section 565.091 to require a defendant to use "fighting words" with the purpose to cause emotional distress to the victim, and he contends his Facebook messages and voicemail did not constitute fighting words. In applying *Vaughn*, this Court determined, acts done without good cause and with the purpose to cause emotional distress punish actions that, by their very occurrence, inflict injury or tend to incite an immediate breach of the peace. This claim, therefore, fails. The circuit court did not err in overruling Collins' motion for judgment of acquittal and entering judgment on this count because there was sufficient evidence to support Collins' conviction for second-degree harassment.

11

**Double Jeopardy**

In his final point, Collins argues the circuit court erred in punishing him for both tampering with a judicial officer and second-degree harassment because this violated his right to be free from double jeopardy. Collins believes second-degree harassment is a lesser-included offense of tampering with a judicial officer because it is impossible to commit the crime of tampering with a judicial officer without also committing second-degree harassment.

This Court reviews double jeopardy claims *de novo*. *State v. Daws*, 311 S.W.3d 806, 808 (Mo. banc 2010). "The Fifth Amendment Double Jeopardy Clause, made applicable to the states through the Fourteenth Amendment, protects a defendant 'both from successive prosecution for the same offense and from multiple punishments for the same offense.'" *State v. Bazell*, 497 S.W.3d 263, 265-66 (Mo. banc 2016) (quoting *Mallow v. State*, 439 S.W.3d 764, 771 (Mo. banc 2014)). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *State v. Hardin*, 429 S.W.3d 417, 421 (Mo. banc 2014) (quoting *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L.Ed.2d 535 (1983)). "Double jeopardy analysis regarding multiple punishments is limited to determining whether the legislature intended cumulative punishments." *Bazell*, 497 S.W.3d at 266.

The statutes criminalizing tampering with a judicial officer and second-degree harassment are silent as to whether the legislature intended cumulative punishments for these offenses. "In the absence of an offense-specific indication of legislative intent, the

12

legislature's general intent regarding cumulative punishments is expressed in section 556.041." *Hardin*, 429 S.W.3d at 422. Section 556.041.1(1) provides in relevant part:

> When the same conduct of a person may establish the commission of more than one offense he or she may be prosecuted for each such offense. Such person may not, however, be convicted of more than one offense if [o]ne offense is included in the other, as defined in section 556.046.

Section 556.046.1(1) states an offense is a lesser-included offense when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" Section 556.046.1 essentially codified the "same elements" test articulated in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L.Ed.2d 306 (1932), to determine if two crimes constitute the same offense for double jeopardy purposes. *Daws*, 311 S.W.3d at 808 n.3. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. "If each crime requires proof of a fact the other does not, and the defendant is convicted of both, double jeopardy is not violated." *State v. Smith*, 456 S.W.3d 849, 853 (Mo. banc 2015). "[M]ultiple punishments are permissible if the defendant has in law and in fact committed separate crimes." *State v. Sanchez*, 186 S.W.3d 260, 267 (Mo. banc 2006).

As stated previously, Collins was charged under section 565.091, which provides a defendant commits second-degree harassment "if he or she, without good cause, engages

in any act with the purpose to cause emotional distress to another person." Section 575.095 provides a defendant commits tampering with a judicial officer

> if, with the purpose to harass, intimidate or influence a judicial officer in the performance of such officer's official duties, such person:
>
> > (1) Threatens or causes harm to such judicial officer or members of such judicial officer's family;
> >
> > (2) Uses force, threats, or deception against or toward such judicial officer or members of such judicial officer's family;
> >
> > (3) Offers, conveys or agrees to convey any benefit direct or indirect upon such judicial officer or such judicial officer's family;
> >
> > (4) Engages in conduct reasonably calculated to harass or alarm such judicial officer or such judicial officer's family, including stalking pursuant to section 565.225 or 565.227.

For the tampering offense, Collins was charged with acting with a purpose to harass A.G., a probation officer, by engaging in conduct reasonably calculated to harass or alarm her.

Collins maintains the words "harass" and "alarm" are alternative ways to define harassment, and it is impossible to harass or alarm someone without causing them emotional distress. Hence, Collins believes second-degree harassment is a lesser-included offense of tampering with a judicial officer.

This Court addressed this precise issue in *Hardin*, a case in which the defendant was charged and convicted of fourteen offenses, including one count of aggravated stalking and five counts of violating a protective order. *Hardin*, 429 S.W.3d at 419. The defendant argued on appeal that the aggravated stalking and protective order violation convictions were based on the same conduct and, therefore, violated double jeopardy. *Id*. at 421. The

14

defendant further argued it was impossible to commit aggravated stalking without violating a protective order and, as such, violating a protective order was a lesser-included offense of aggravated stalking. *Id*. at 423. The defendant's argument was premised on how the latter offense was indicted, proved, or submitted to the jury to determine if it was a lesser-included offense. *Id*. This Court noted, however, "an indictment-based application of this definition [of lesser-included offenses] has been expressly rejected." *Id*. at 424. Instead, the reviewing court is required to "'compare the [s]tatute of the greater offense with the factual and legal elements of the lesser offense,' not 'compare the [c]harge or averment of the greater offense with the legal and factual elements of the lesser offense.'" *Id*. In applying this test, this Court compared the aggravated stalking statutory elements contained in section 565.225.2, RSMo Supp. 2009, with the protective order violation statutory elements contained in section 455.085.2, RSMo 2000. *Id*. at 423. This Court held "aggravated stalking *may* be established by proof of a protective order violation, but it may also be established by proof of other facts" contained in section 565.225.2; therefore, aggravating stalking did not include the protective order violation offense. *Id*. at 424 (emphasis in original).[6]

---

[6] In his reply brief, Collins argues *Hardin*'s holding departs from *State v. McTush*, 827 S.W.2d 184 (Mo. banc 1992), and *Peiffer v. State*, 88 S.W.3d 439 (Mo. banc 2002), because the state's charging document controlled the same elements analysis when determining whether double jeopardy was violated. Specifically, Collins alleges those opinions mentioned the statutory elements of the charged offense and contained footnotes surmising the outcome may have been different if the state had elected to charge the defendants with different conduct under those same statutes. To the extent *McTush* and *Peiffer* are construed to embrace an indictment-based approach to analyzing double jeopardy claims, they should no longer be followed.

Here, just as in *Hardin*, tampering with a judicial officer *may* be established with proof of a purpose to harass, but it also may be established with proof of the purpose to influence a judicial officer when a defendant "[o]ffers, conveys or agrees to convey any benefit direct or indirect upon such judicial officer or such judicial officer's family," which differs from an act committed without good cause for the purpose to cause emotional distress under the second-degree harassment statute. Hence, contrary to Collins' claim, it is possible to commit tampering with a judicial official without also committing second-degree harassment. Collins committed separate crimes when he tampered with a judicial officer and engaged in second-degree harassment. Accordingly, second-degree harassment is not a lesser-included offense of tampering with a judicial officer. Collins' right to be free from double jeopardy was not violated when the circuit court imposed a separate sentence for each of these offenses.

### Conclusion

The circuit court's judgment is affirmed.

_____
GEORGE W. DRAPER III, Judge

All concur.

16